AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 51, Anna Williams, Roberta Butler, Elaine McKinsey, Mildred Miller and John Turri, Plaintiffs,

v.

James BAKER, III, Secretary of the Department of the Treasury, Defendant.

No. C–85–9196 SC.

United States District Court, N.D. California.

May 26, 1987.

Mary Dryovage, San Francisco, Cal., Joseph F. Henderson, Staff Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., Deborah Kaplan, Trembath, McCabe, Schwartz, Evans & Levy, Concord, Cal., for plaintiffs.

Joseph P. Russoniello, U.S. Atty., Joann M. Swanson, Asst. U.S. Atty., for defendant.

CONTI, District Judge.

This cause came on regularly for trial on May 18, 1987, before the court sitting without a jury. Mary Dryovage, Joseph F. Henderson and Deborah Kaplan appeared as counsel for plaintiffs, and Joann M. Swanson, Assistant U.S. Attorney, and Jean Gentry, Staff Attorney, Office of Chief Counsel, Department of Treasury, appeared as counsel for defendant. The court having heard the testimony and having examined the proofs offered by the respective parties, and the matter having been submitted for decision, the court, being fully advised in the premises, finds that this cause is not ready for final decision at this time; however, the court makes the following interim findings and order.

1. The district court has subject matter jurisdiction over this dispute under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. s 621 *et seq.*

2. Venue in this action is properly in the Northern District of California.

3. At all times relevant herein, named plaintiffs, Anna Williams, Roberta Butler, Elaine (Stubblefield) McKinsey, Mildred Miller and John Turri (hereafter referred to as "named plaintiffs") were "employees" of defendant within the definition of 42 U.S.C. 2000e(f).

4. At all times relevant herein, defendant was and is an "employer" within the meaning of the definition of 42 U.S.C. 2000e(f), and the San Francisco Assay Office of the U.S. Mint was and is an "agency" within the meaning of the definition of 5 U.S.C. 7103(a)(3).

5. Each of the named plaintiffs is a handicapped person within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 791.

6. Three of the named plaintiffs are over age forty; Anna Williams, date of birth 9/3/23 (64 years); Roberta Butler, date of birth 11/5/26 (61 years); Mildred Miller, date of birth 7/7/29 (58 years).

7. Roberta Butler is a 61–year old woman who has worked as a coin checker at the U.S. Mint for nineteen years.

8. Mildred Miller is a 57–year old woman who has worked as a coin checker at the U.S. Mint for over nineteen years.

9. Anne Williams is a 64–year old woman who has worked as a coin checker at the U.S. Mint for eighteen years.

10. Elaine McKinsey is approximately 33 years of age and has worked as a coin checker at the U.S. Mint for ten years.

11. John Turri is a male who has worked as a coin checker at the U.S. Mint for fourteen years.

12. The San Francisco Assay Office (Mint) does not produce any commercial coinage. Its exclusive function is to coin, package, and ship "uncirculated" or "proof" coin sets.

13. All of the individual plaintiffs are employed as coin checkers in the 5 Coin Proof Branch, which is part of the Packaging Division within the San Francisco Mint. The 5 Coin Proof Branch is responsible for packaging the 5 Coin Proof set, specifically, inspecting loose proof coin, inserting them into cardboard inserts, and putting them into plastic display cases, and inspecting them before final sealing by a machine. This set includes coins in $.50, $.25, $.10, $.05, and $.01 denominations. The 5 Coin Proof set program is a permanent packaging program at the San Francisco Mint. It is staffed with permanent coin checker positions, although temporary coin checkers are hired when the demand requires. The San Francisco Mint has other coin programs.

As stated, the plaintiffs in this case are five handicapped employees who have worked for the San Francisco Mint for 10 to 19 years. During a majority of their employment they have worked in the section that assembles five coin proof sets; however, prior to March 1984, the sets were assembled on an assembly line basis, and in 1984 the procedure was changed to an individual station system and each person was given individual accountability and a daily quota.

The evidence indicated that this system methodology change was traumatic to the plaintiffs, who have varied disabilities and who were thrust into a system wherein they had no special training or assistance in improving their job skills. Not only did the plaintiffs not have any method on their own initiative to cope with the new change—no personnel in the Mint had training or knowledge regarding dealing with handicapped persons, i.e., training, assisting, or accommodating with reference to this new system.

These handicapped plaintiffs, under this new system, were without the requisite training and accommodation needed for the skills and production rate required. This prompted notification of their termination.

The record establishes that all five plaintiffs in the case received performance ratings ranging from "satisfactory" to "outstanding" for the majority of their 10–19 year tenure. It is clear that the plaintiffs might very well have maintained their record "but for" the new system and its individual performance quotas. The plaintiffs (except now for Mrs. Butler) face termination of their employment.

■ If the plaintiffs or any handicapped employee can not perform the "essential functions" of the job in question, the employer may terminate said employee. However, when a handicapped person is not able to perform the essential functions of the job, the employer, and later the court, must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform those functions. *See School Bd. of Nassau County, Florida v. Arline*, —— U.S. ——, 107 S.Ct. 1123, n. 17, 94 L.Ed.2d 307 (1987), as to accommodation limits.

■ In the instant case, the defendant is under an obligation to make "reasonable accommodation" to determine whether the plaintiffs can perform those essential functions.

The Mint has no supervisory or other employees who have had any specialized training in dealing with the handicapped in the use of proven techniques that would adapt the handicapped to perform their job tasks successfully, nor did the defendant seek outside professional help to obtain training or methods of reasonable accommodation to these handicapped employees. It is interesting to note that one plaintiff, Roberta Butler, when allowed to work with several skilled workers, has improved her work to acceptable levels.

The defective element in the defendant's procedure leading to the termination of employment is its failure to satisfy the law and regulations with reference to its efforts and the requirements to seek "accommodation" prior to any final decision. This is an indispensible prerequisite.

■ Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.

The federal government shall become a model employer of handicapped individuals. 29 C.F.R. §§ 1613.701, *et seq.*

The plaintiffs have established a prima facie case of handicap discrimination, and the burden now shifts to the defendant to show:

> ... that the physical criteria offered as justification for refusal to hire the plaintiff are 'job-related'. If the issue of reasonable accommodation is raised, the agency must then be prepared to make a further showing that accommodation cannot reasonably be made that would enable the handicapped applicant to perform the essentials of the job adequately and safely; in this regard the [federal employer] must 'demonstrate that the accommodation would impose an undue hardship on the operation of its program', 29 C.F.R., § 1613.704(a), taking into consideration the factors set forth by 704(c).

While the Supreme Court has held that non-government employers need not accommodate if the accommodation would require "more than a *de minimis* cost", *Trans World Airlines v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. 2264, 2276–77, 53 L.Ed. 2d 113 (1977), the legislative history of § 501 of the Rehabilitation Act (applying solely to the federal government as employer) indicates that the contrary was intended with respect to the government:

> "As the debate over the McClure amendment shows, Congress was unwilling to approve language that would have limited the government's duty to make reasonable accommodation to instances in which the cost of accommodation does not disproportionately exceed actual damages."

*Prewitt v. United States Postal Service*, 662 F.2d 292, 310 at 308, n. 22. *See also*, 29 C.F.R. §§ 1613.701 *et seq.* (The Federal Government shall become a model employer of handicapped individuals.)

In light of the foregoing, it would appear that the government has fallen short of meeting its burden of showing the impossibility of reasonable accommodation without undue hardship. This is particularly so if it is true, as plaintiffs allege, that the San Francisco Mint generates a profit, and con-

tinues to generate more money than is required to operate its facility.

In accordance with the foregoing, it is hereby ordered that:

1. Within thirty days from the date of this order, the agency shall retain, at its own expense, a Rehabilitation Specialist to oversee the implementation of this order, and report to this court within six months from the date of this order (or within the reasonable time needed as indicated by the Specialist), on the steps taken to comply with this order.

2. The specialist will be agreed upon by the parties and approved by the court, or, if the parties are unable to agree, the court will select from recommendations by the parties. The Rehabilitation Specialist shall be compensated at a reasonable rate, based on community standards for rehabilitation consultants. Said Rehabilitation Specialist shall have the following credentials: training and experience in working with learning disabled adults, mentally retarded adults, physically disabled adults, and adults with visual impairments; training and experience in job analysis, job restructuring and making recommendations to employers regarding accommodating handicapped employees; knowledge of rehabilitation engineering. The Rehabilitation Specialist shall determine reasonable accommodation for each individual plaintiff by:

(a) Interviewing individual plaintiffs regarding placement preferences and abilities, and necessary testing;

(b) Selecting accommodations, including combinations of the following:

(i) Training which reflects slower paced presentation of instructions, modeling, positive reinforcement, verbal mediation, verbal and/or physical prompts, repetition;

(ii) Restructuring of the existing job pursuant to the OPM Handbook on Reasonable Accommodation and Employing the Handicapped;

(iii) Job reassignment with additional training specific to that job. The trial evidence indicates that there are at least 15 separate departments at the Mint employing 410 permanent employees, plus many temporary employees. The job reassignment, if any, should be in the WG–02 levels;

(iv) Appropriate assistive devices, including gloves, rubber tips, jewelers magnifying glass, equipment to make lifting and carrying easier, etc.

3. Defendant shall reimburse each of the plaintiffs for overtime lost due to leave taken to attend court hearings, depositions, physical and mental examinations.

4. Defendant is prohibited from engaging in any retaliatory action against the plaintiffs.

5. In the event that defendant determines that one or more of the plaintiffs cannot perform the essential functions of any job, with the above accommodations, the agency may submit an application for disability retirement after obtaining approval either by:

(a) Stipulation of the parties, or

(b) Written approval from the Rehabilitation Specialist and order of the court.

For purposes of implementing this order, there shall be no distinction between temporary and permanent positions.

The court retains jurisdiction over this case, and the Injunction heretofore ordered shall remain in effect.