859 P.2d 748

**Michael MATOS and Maria Matos, husband and wife; Ronald Daye and Catherine Daye, husband and wife, Plaintiffs/Appellants,**

v.

**CITY OF PHOENIX, Defendant/Appellee.**

**No. 2 CA–CV 92–0183.**

Court of Appeals of Arizona,
Division 2,
Department B.

Jan. 26, 1993.

Review Denied Oct. 5, 1993.

Law Office of Stanley Lubin by Stanley Lubin and Lisa K. Hudson, Phoenix, for plaintiffs/appellants Matos.

Michael Napier, Phoenix, for plaintiffs/appellants Daye.

Lewis and Roca by Susan M. Freeman and Richard S. Cohen, Phoenix, for defendant/appellee.

## OPINION

DRUKE, Presiding Judge.

This appeal challenges an adverse summary judgment on appellants' claims against the City of Phoenix for handicap and age discrimination in violation of the Arizona Civil Rights Act. This court has

jurisdiction pursuant to A.R.S. § 12–2101(B).

## FACTS AND PROCEDURAL BACKGROUND

Appellants Matos and Daye each served as police officers for the city for more than 20 years. During the course of their respective employments, both developed physical disabilities. The city accommodated each man's physical limitations by assigning him to the light-duty position of call-back officer.

The duties of a call-back officer are to remain at the telephone, returning calls to people who have reported crimes and incidents in order to obtain information to determine whether another officer should be sent to the crime scene and/or what other initial investigative methods, if any, should be utilized to further investigate a complaint. It is undisputed that a call-back officer performs a necessary police function. Neither Matos nor Daye required accommodations to his physical condition to perform this light-duty function.

In September 1986, the city amended its light-duty policy by limiting such assignments to a period of six months unless the officer's injury was work related.[1] In no event, however, was an officer permitted to remain on light duty past the eligibility date for normal retirement under the pension plan for police and fire personnel established and administered by the State of Arizona. *See* A.R.S. §§ 38–841 through 38–859.

Based on this policy, the city informed both Matos and Daye in June 1988 that they would not be allowed to continue in their positions as call-back officers and ordered them to return to patrol duty. Because neither was physically able to return to patrol duty, both were terminated.

Appellants filed suit against the city alleging that they had been discriminated against because of their ages and handi-

---

1. Although Matos's injury was not work related, he was exempt from the six-month limitation under a grandfather provision of the policy.

caps in violation of the Arizona Civil Rights Act (ACRA), A.R.S. §§ 41–1461 through 41–1465. After cross-motions for summary judgment, the trial court ruled in favor of the city, finding that appellants are not "handicapped individuals" as defined by the ACRA and, thus, had no cause of action based on the act. The court also concluded that appellants' termination was not age-related and that the city's light-duty policy was a bona fide benefit plan and not an unlawful employment practice with regard to age. Appellants filed a motion for new trial based on newly discovered evidence, which the court denied. This appeal is from both the granting of summary judgment and the denial of a new trial.

## DISCUSSION

We will affirm the trial court's grant of a motion for summary judgment if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990). Assuming discovery is complete, the trial court should grant summary judgment if, on the state of the record, it would have to grant a motion for directed verdict at the trial. *Id.* at 309, 802 P.2d at 1008. Appellants claim the trial court erred in three respects: (1) by finding that appellants were not "qualified handicapped individuals" entitled to the protection of the ACRA, (2) by denying their motion for a new trial based on newly discovered evidence, and (3) by concluding that their terminations were not age-related and that the city's light-duty policy was a bona fide benefit plan.

## HANDICAP DISCRIMINATION

 Appellants' handicap discrimination claim is based on A.R.S. § 41–1463(B), which prohibits an employer from discharging "any individual ... because of such individual's ... handicap" or in failing or refusing "to reasonably accommodate an individual's handicap." For the purposes of the ACRA, "individual" means a "qualified handicapped individual." A.R.S. § 41–1463(M). A.R.S. § 41–1461(7) defines "qualified handicapped individual" as:

a person with a handicap who with reasonable accommodation is capable of performing *the essential functions of the particular job in question* within the normal operation of the employer's business in terms of physical requirements, education, skill and experience.

(Emphasis added.) Although "qualified handicapped individual" has not been interpreted previously in this jurisdiction, the ACRA appears to be similar in intent and purpose to § 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794. Accordingly, case law interpreting that section of the Rehabilitation Act is persuasive in interpreting the ACRA. *See Higdon v. Evergreen International Airlines, Inc.*, 138 Ariz. 163, 673 P.2d 907 (1983). Under the Rehabilitation Act, a "qualified handicapped person" is an individual "who, with or without reasonable accommodations, can perform the essential functions of the position in question without endangering the health or safety of the individual or others...." 29 C.F.R. § 1613.702(f) (1991). It is an individual who is "able to meet *all* of a program's requirements in spite of [that individual's] handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980, 988 (1979) (emphasis added). Further, these requirements must be reasonable, legitimate, and necessary for the position in question. *Simon v. St. Louis County, Mo.*, 735 F.2d 1082, 1084 (8th Cir.1984).

In granting the city's motion for summary judgment, the trial court held that the term "particular job" in A.R.S. § 41–1461(7) "refers to the job of police officer, not the function of call back operator" and that the phrase "essential functions" refers "to the whole gamut of functions of being a police officer." The court accepted the city's position that the essential functions of a police officer include the ability to make a forceful arrest at all times and that because Matos and Daye were unable to perform this essential function, neither was a "qualified handicapped individual" under the ACRA.

Appellants do not dispute that they cannot make a forceful arrest. Instead they

argue that the ability to make a forceful arrest is not an "essential function" of the job of all police officers. Appellants contend that to require every police officer to be able to make a forceful arrest is to say that one cannot be a police officer without that ability. The requirement to have that ability, they assert, is belied by the fact that the city currently employs two police officers in light-duty positions who cannot make a forceful arrest; one is wheelchair bound and the other is severely brain damaged. It is thus apparent, they argue, that the ability to make a forceful arrest is essential only to an officer assigned to a function in which that ability would be necessary, such as patrol officer, and is not essential to an officer assigned, as they were, to the call-back position.

■ In essence what appellants are arguing is that the "particular job in question" referred to in A.R.S. § 41–1461(7) is that of a call-back officer, not a police officer, and thus, because they could fulfill all the duties of a call-back officer, they were entitled to the protection of the ACRA. The inherent weakness of appellants' argument, however, is that they were not hired to be call-back officers. There is no such job classification in the city. Appellants were hired to serve as police officers and were paid accordingly even while they were assigned to call-back positions. While that assignment may involve one of the essential police functions, it plainly does not meet the test established by A.R.S. § 41–1461(7). That test is satisfied only upon a showing that a handicapped individual, with reasonable accommodation, is capable of performing all the essential functions of the job for which he or she was hired and not merely one or two essential tasks of that job. *See Simon, supra* (paraplegic police officer unable to make forceful arrest and unable to be transferred throughout department not otherwise qualified); *Coski v. City and County of Denver,* 795 P.2d 1364 (Colo. App.1990) (quadriplegic patrol officer not qualified because unable to make forceful arrest or fire weapon); *Blumhagen v. Clackamas County,* 91 Or.App. 510, 756 P.2d 650 (1988) (deputy sheriff with head and neck injury unable to perform patrol functions; thus, not qualified).

The undisputed facts here demonstrate that the primary function of the city's police officers is to protect the life and property of its inhabitants and to take whatever actions are necessary to do so. These include patrol duty, investigating crimes, arresting individuals accused of violating the law, participating in crowd and riot control, and instituting procedures in emergency situations involving the threatened or actual loss or destruction of property and life. To meet its needs, the city requires that its officers be able to make a forceful arrest. This requirement applies even to officers regularly filling desk assignments because those officers constitute the police department's reserve strength. That all police officers in the department must be able to make a forceful arrest has been found to be a "national standard" and "reasonable, legitimate and necessary to guarantee effective police work...." *Simon,* 735 F.2d at 1084.

■ With regard to the two disabled officers currently on light-duty assignments, we do not believe that their continued employment somehow magically alters the qualifications necessary to serve as a police officer. Both of those officers are working under the police department's light-duty policy, which permits them to continue working until they are eligible for retirement, *despite the fact* that they can no longer perform the full range of essential functions of a police officer. The city could terminate them at any time. It is under no legal obligation to retain them as police officers or to continue its light-duty policy. Moreover, under that policy, the officers will be terminated when they become eligible for retirement, just as appellants were.

■ Finally, appellants argue that because they performed light-duty clerical work for a period of time, they should be allowed to continue in that position indefinitely, as a form of accommodation. They do not claim that the city has an obligation to create a new job or to reassign them; rather, they argue that the city must fol-

low the accommodation policy it has already established, citing *American Federation of Government Employees, Local 51 v. Baker,* 677 F.Supp. 636 (N.D.Cal.1987). We do not find *American Federation* persuasive. Contrary to appellants' argument, the court in *American Federation* did not suggest in any way that an individual should be permitted to continue working in the same job classification without having to perform the same "essential functions" as other workers in the same job category. Rather, the court simply concluded that the employer was under an obligation to make "reasonable accommodation to determine whether the [individual could] perform those essential functions." *Id.* at 638. Accommodation of the type proposed by appellants would require a fundamental alteration in the nature of the position of police officer. An employer is not required to accommodate an employee by eliminating one or more of the essential functions of the job. *Southeastern Community College,* 442 U.S. at 413, 99 S.Ct. at 2370, 60 L.Ed.2d at 993; *see also Doherty v. Southern College of Optometry,* 862 F.2d 570 (6th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985).

It is clear that appellants could not perform all, or even substantially all, of the essential functions of a police officer; therefore, the trial court properly concluded that neither was a "qualified handicapped individual" entitled to the protection of the ACRA and was lawfully subject to termination at the city's discretion.

## DENIAL OF MOTION FOR NEW TRIAL

■ Following the trial court's entry of summary judgment for the city, appellants filed a motion for new trial based on newly discovered evidence. The evidence consisted of the testimony of a police department major at a subsequent unrelated administrative hearing before the State Pension Board. At the hearing, the major stated that the city does indeed consider an officer working call-back as an officer who is performing a "reasonable range of duties" for a police officer. Appellants argue that this testimony flies in the face of the trial court's determination that "essential functions" refers to the whole gamut of functions of a police officer.

■ The grant or denial of a motion for new trial is within the sound discretion of a trial court, and we will not upset its ruling absent a clear showing of an abuse of discretion. *Adroit Supply Co. v. Electric Mutual Liability Ins. Co.,* 112 Ariz. 385, 542 P.2d 810 (1975); *Wendling v. Southwest Savings & Loan Association,* 143 Ariz. 599, 694 P.2d 1213 (App.1984). In order to warrant a new trial based on newly discovered evidence, it must appear to the trial court that the evidence would probably change the result upon rehearing and that it could not have been discovered before trial by the exercise of due diligence. *Black v. Black,* 114 Ariz. 282, 560 P.2d 800 (1977). In addition, the evidence must have been in existence at the time of trial, but if it was in the possession of the moving party before judgment was rendered, it is not newly discovered and does not entitle the party to relief. *Roberts v. Morgensen Motors,* 135 Ariz. 162, 165, 659 P.2d 1307, 1310 (App.1982); *Ashton v. Sierrita Mining and Ranching,* 21 Ariz.App. 303, 518 P.2d 1020 (1974); *see also* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2859 (1973).

The major's testimony stated nothing more than what the city had already acknowledged. The major merely testified that an officer on call-back assignment served *"an* essential function of the police department" and that the job was "within the reasonable range of duties for a police officer." (Emphasis added.) This in no way contradicts the city's evidence that the responsibilities of the light-duty positions satisfied one of the essential functions of a police officer. The evidence is not newly discovered, merely cumulative. Thus, it would not have changed the result upon rehearing and the trial court properly denied the motion for new trial.

## AGE DISCRIMINATION

■ Appellants' age discrimination claim is also based on the ACRA, which makes it unlawful for an employer to discharge an individual because of that person's age. A.R.S. § 41–1463(B). Cases analyzing the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 through 634, are relevant in interpreting the comparable ACRA provisions on age discrimination. *Higdon, supra; Sees v. KTUC, Inc.*, 148 Ariz. 366, 714 P.2d 859 (App.1985).

■ In *Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1316 (9th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982), the Ninth Circuit held that

> [a]ge need not be the sole factor in discharge or other discriminatory practice [for an individual to prevail]. Conversely, it is not enough that age discrimination be present or even that it figure in the decision to fire; age must 'make a difference' between termination and retention of the employee in the sense that, but for the presence of age discrimination, the employee would not have been discharged.

The court additionally held that

> [b]ecause the attribute with which the [ADEA] is concerned comes to each of us in time, it will inevitably be present in a multitude of employee discharges. It will be a factor in many and a determining factor in some. It is only this latter group that can obtain relief under the [ADEA]....

*Id.* To prevail on a claim of age discrimination, therefore, an individual must establish that age was a determining factor in his or her discharge, namely, that but for the presence of age discrimination, the individual would not have been discharged.

■ In granting the city's motion on appellants' age claim, the trial court held that "the mere fact that by chronological considerations you would have to be at least 41 to qualify [for retirement] would not make the firing age related." The court additionally found that the city's light-duty policy was a "bona fide [benefit] plan of retirement that applies to both" appellants and that, pursuant to A.R.S. § 41–1463(F)(4)(b), it was not an unlawful employment practice.

Appellants argue that because an individual must be at least 21 years old to become a police officer and will be at least 41 at the end of 20 years of service, the fact that the city forced them to retire after they reached retirement eligibility constitutes discrimination. In other words, because the city's light-duty policy only affects officers who are over 40, it must constitute age discrimination.

It is insufficient for an individual alleging age discrimination, however, merely to demonstrate that an employment action occurred and that he or she is in the protected age category. Rather, appellants must prove that age was a determinative factor in their termination. The undisputed facts demonstrate that the police department's light-duty policy did not discriminate against appellants because of their age. They were terminated because they could no longer perform the essential functions of a police officer and had become eligible for retirement. Arizona law expressly provides that there is no unlawful age discrimination where the employer's action is based on a reasonable factor other than age. A.R.S. § 41–1463(F)(4)(a). The critical cutoff of the light-duty policy is not keyed to age, but rather to one's ability to retire with a pension. This policy applies to all officers injured on the job, regardless of age. An officer hired at age 35 and injured five years later will qualify for the same amount of light-duty work until he or she is eligible for retirement at age 55 as an officer hired at 21 and injured five years later. Because the cutoff for light duty is tied to eligibility for retirement, not age, injured officers in their 50s or even 60s may continue working while similarly situated officers in their early 40s will be terminated upon reaching 20 years of service.

Appellants have provided *no* evidence that their ages played any factor, let alone a determinative factor, in their termination; therefore, the trial court correctly granted summary judgment for the city. Because

we agree with the trial court that appellants' terminations were not age related, we need not decide whether the city established as a matter of law that its light-duty policy was a "bona fide benefit plan."

## CONCLUSION

The undisputed facts demonstrate that the city was entitled to judgment as a matter of law; thus, the trial court did not err in granting its motion for summary judgment as to appellants' handicap and age discrimination claims. Additionally, the trial court did not abuse its discretion in denying appellants' motion for new trial.

Affirmed.

FERNANDEZ and HATHAWAY, JJ., concur.