BABCOCK & WILCOX COMPANY, APPELLEE, *v.* OHIO CIVIL RIGHTS
COMMISSION, APPELLANT.

[Cite as Babcock & Wilcox Co. *v.* Ohio Civil Rights Comm. (1987),
31 Ohio St. 3d 222.]

(No. 86-1063—Decided July 15, 1987.)

*Buckingham, Doolittle & Burroughs, John T. Billick, Sullivan & Cromwell* and *William A. Ziegler,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Sherrie J. Passmore,* for appellant.

*Per Curiam.* In *Hazlett* v. *Martin Chevrolet, Inc.* (1986), 25 Ohio St. 3d 279, 25 OBR 331, 496 N.E. 2d 478, syllabus, we held that "[d]rug addiction and alcoholism are handicaps as defined in R.C. 4112.01(A)(13)." Since *Hazlett* was decided after the court of appeals issued its decision in this cause, neither of the lower courts had the benefit of that decision. Therefore, we must reverse the decision of the court of appeals which directly contradicts our holding in *Hazlett* and remand this matter to the trial court for reconsideration, in light of *Hazlett,* of the issue of whether Wirth was impermissibly rejected by B & W because of his handicap.[1]

*Judgment reversed
and cause remanded.*

MAHONEY, GEORGE, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs separately.

MOYER, C.J., dissents.

DOUGLAS, J., dissents with opinion.

MAHONEY, J., of the Ninth Appellate District, sitting for SWEENEY, J.

GEORGE, J., of the Ninth Appellate District, sitting for LOCHER, J.

GEORGE, J., concurring. Neither the trial court nor the court of appeals had the opportunity to view this case in the context of *Hazlett* v. *Martin Chevrolet, Inc.* (1986), 25 Ohio St. 3d 279, 25 OBR 331, 496 N.E.2d 478. Thus, neither court looked at the merits of the case, but rather decided the case on a question of law, *i.e.,* that alcoholism was not a handicap as that term is defined in R.C. 4112.01(A)(13). Since neither the trial court nor the appellate court had the benefit of the *Hazlett* decision, it is appropriate that each court should be given the opportunity to view this case in the light of that pronouncement.

On remand, the trial court must determine as a matter of law whether the Ohio Civil Rights Commission's determinations, finding Wirth to be an

---

[1] We do not believe that it is appropriate for us to review the record in this case since neither the court of appeals nor the trial court has reviewed the facts before the commission in light of our holding in *Hazlett, supra.*

alcoholic, and finding that his job rejections were related to his alcoholism, are supported by reliable, probative and substantial evidence. R.C. 4112.06(E). See *Hazlett, supra,* at 281, 25 OBR at 333, 496 N.E. 2d at 480. The trial court is obligated to review the evidence presented to the commission, particularly as it addresses the determinative issues. In this review, the trial court must determine whether the evidence sufficiently supports the commission's finding of a handicap discrimination. If the findings are supported by reliable, probative and substantial evidence, they are conclusive and should be affirmed. *South Wind Motel* v. *Ohio Civil Rights Comm.* (1985), 24 Ohio App. 3d 209, 24 OBR 386, 494 N.E. 2d 1158. However, if the findings are based upon evidence which is not reliable, such as when inferences are improperly drawn from the evidence, they are legally deficient and thus should be reversed. *Plumbers & Steamfitters Commt.* v. *Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192, 200, 20 O.O. 3d 200, 205, 421 N.E. 2d 128, 133; *Republic Steel Corp.* v. *Hailey* (1986), 30 Ohio App. 3d 103, 30 OBR 202, 506 N.E. 2d 1215, paragraph two of the syllabus.

Not every person claiming to be alcoholic is an alcoholic for the purposes of an action under R.C. Chapter 4112. R.C. 4112.01(A)(13) defines a handicap as a "* * * medically diagnosable, abnormal condition * * *." In *Hazlett,* the drug addiction recognized by this court as a handicap was supported by both a treating physician and a drug counselor. Something more than the self-serving testimony of the person claiming the handicap might be needed to demonstrate an otherwise hidden disability. Whether the person actually has such a handicap and whether the handicap would affect job performance are factual determinations to be made in each case.

MAHONEY and WRIGHT, JJ., concur in the foregoing opinion.

HOLMES, J., concurring. In *Hazlett* v. *Martin Chevrolet, Inc.* (1986), 25 Ohio St. 3d 279, 25 OBR 331, 496 N.E. 2d 478, in my concurring and dissenting opinion at 282, 25 OBR at 334, 496 N.E. 2d at 481, I agreed that one should not be the object of discriminatory treatment on account of former status as a drinking alcoholic, and that such persons who have recognized their problem and are undertaking rehabilitation are under the protections of R.C. 4112.01 *et seq.* However, this chapter provides in unambiguous terms that the statute shall not "be construed to require a handicapped person to be employed or trained under circumstances that would significantly increase the occupational hazards affecting either the handicapped person, other employees, the general public, or the facilities in which the work is to be performed, or to employ or train a handicapped person in a job that requires him routinely to undertake any task, the performance of which is substantially and inherently impaired by his handicap." R.C. 4112.02(L). Consequently, while mere status as an alcoholic may not be the *per se* basis for a hiring or firing decision, those job-related

debilitations which flow from the inordinate and habitual consumption of alcohol are most certainly factors which a responsible employer may, and indeed must, consider as part of such decision.

Recognizing the potentiality of accidents or injuries to the handicapped person and his co-workers, as well as the likelihood of other workplace problems, if employers were required to literally comply with R.C. 4112.02(E), the General Assembly excepted certain considerations. Under subsection (O), employers are permitted to "(1) [e]stablish bona fide employment qualifications reasonably related to the particular business or occupation which may include standards for skill, aptitude, physical capability, intelligence, education, maturation, and experience."

By way of analogy, those afflicted with alcoholism often suffer impairment of "skill, aptitude, physical capability, intelligence, [and] education." Such persons may be further plagued by lethargy, psychological disorders and/or inability to resist becoming intoxicated while at work. It is only rational that employers have the legal ability to take notice of such factors.

In order for the petitioner, in the case *sub judice,* to fall within the purview of the chapter, there must be a showing by substantial, reliable, and probative evidence, that the complainant was either an alcoholic or that he was a recovering alcoholic at the time of the interview upon which both decisions to refuse employment were made. One who claims to be an alcoholic, or a recovering alcoholic, must shoulder the burden of proof himself, not merely by his own affirmation that he was an alcoholic or that, having been such, he no longer drinks. His word would only be credible, according to all the testimony before, and findings of, the Civil Rights Commission, if he in fact had recognized the problem and was reasonably attempting to meet it.

It appears that there was no showing in the record that complainant had ever been diagnosed as an alcoholic by anyone but himself. He has not, during the time in question, entered into any hospital program for detoxification, nor had he been seen by any physician, psychiatrist, or psychologist. No medically qualified person testified before the commission that complainant either was or had been an alcoholic, or that he was a non-drinking alcoholic at the time of the job interview.

Although he had never examined or diagnosed complainant's condition, the sole medical expert testified for complainant at the commission hearing. He established that an alcoholic who merely "swore off" alcohol, but who had not participated in a hospital detoxification program, would have a poor chance of successfully combating his addiction, even if he voluntarily attended support group meetings. The expert further testified that, in order to be considered a recovered alcoholic, one must have successfully overcome his alcoholism for "a few years, at least." While there may be provable, individual variations, this assessment generally seems to be reasonable. Accordingly, and as per my concurrence in *Hazlett, supra,* those alcoholics who may receive protection against discriminatory treat-

ment must be limited to those who are shown to be alcoholics and who have demonstrated reasonable measures for recovery and thus deserve the benefit of the doubt.

The commission found that complainant's rejections from the applied-for position "were *related to* complainant's alcoholism * * * [and that his] alcoholism was *a factor* in respondent's refusal to consider him for employment * * *." (Emphasis added.) There are, of course, several difficulties with the above findings. It is beyond dispute that employers have full discretion to hire whomever they please, so long as they do so on the basis of neutral considerations, even if a particular handicap is brought to the attention of the employer. The case before us would appear to be an example of an evaluation based upon factors which were not only neutral but well-established at the company. One example of a legitimate employer concern is found in what appears to be a clearly expressed company policy regarding employee absences. Testimony was to the effect that at the end of each of the more than thirty-five interviews, the interviewer informed the applicants that the company had a strict policy requiring mandatory attendance. Later, one of those hired was terminated because he missed two days of work during the sixty-day probation period. This would seem to constitute a *bona fide* attendance requirement, which, in light of complainant's admission that his "drinking problem" had caused him attendance problems in the job he then held, might constitute a sufficient reason for refusal to hire.

Also, specific job requirements are for an employer to determine, including both the tangible, easily explained criteria as well as the inherently subjective values which may be desired in a prospective employee. In the case here, the interviewer possessed an engineering degree with electrical engineering course work. Of those hired, most also had advanced course work in electronics. Several had associate degrees, and one had nearly earned an electrical engineering degree. The others appeared to have vast experience and skills. Complainant's application may reasonably be evaluated in light of these actions by the employer.

Testimony by the employer that it selected those who individually and subjectively demonstrated a positiveness and eagerness to learn more should be given great weight. While such factors may be less readily demonstrated, it is also commonly understood that such factors are of immense, long-term benefit to employers, generally. On the other hand, the mere fact that a non-drinking alcoholic applies for a position does not entitle him to any more special consideration than may be *voluntarily* extended. Moreover, an assertion that he fulfills all of the company's job requirements must be supported by evidence, not of mere belief that he could perform the assigned tasks, but that he was in fact fully qualified and was overlooked because of his former status as an alcoholic. This latter fact is not proved or inferred when the only evidence provided is that the employer did not hire complainant, but chose others instead.

Peripherally, it would seem that the hiring decisions were based upon neutral criteria and that complainant, among others, did not qualify. Complainant's poor performance upon the first interview may have provided an ample basis upon which to continue to refuse hiring in the subsequent confrontations. However, these determinations must be made at the trial court level in view of this court's holding in *Hazlett.*

Accordingly, I concur in the judgment that this case be remanded to the court of common pleas for further determination.

DOUGLAS, J., dissenting. William Wirth, Jr. was *refused* employment as an electrician by appellee, Babcock & Wilcox Company. Wirth, a recovering alcoholic of six weeks' sobriety, sought assistance from appellant, the Ohio Civil Rights Commission. Wirth charged that appellee refused to hire him because of his handicap, alcoholism. After extensive administrative proceedings, appellant found that appellee had violated R.C. 4112.02(A) and appellant ordered that appellee hire Wirth and pay him back wages.

Appellee appealed the order of the commission. The trial court, pursuant to R.C. 4112.06, reviewed the record of the case. The trial court reversed and vacated the order of the appellant on the basis that its decision was not supported by reliable, probative and substantial record evidence. This judgment of the trial court was unanimously affirmed by the court of appeals. Today, this court reverses the judgments of both lower courts and in so doing, despite protestations to the contrary, *sub silentio* enters into the arena of private employment relations and tells employers in this state that they may not refuse to hire persons just because they are alcoholics and drug addicts. Given the previous positions of this court on the doctrine of employment-at-will in this state, today's decision is not only difficult to understand, but it is also incomprehensible. Consider, as representative samples, the following excerpts from various cases, two of which were recently decided by this court.

In *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144, syllabus, this court held that "[v]iolation of the provisions of R.C. 4101.17 by an employer does not give rise to a civil action for damages." Therefore, even though an employer violated a statute, R.C. 4101.17, and discriminated on the basis of age against any applicant for a job opening, or discharged an employee in violation of the statute, without just cause, such person discriminated against did not, in Ohio, have the right to seek damages for the discrimination even if admittedly done in violation of the statute. It took action by the state legislature to rectify that portion of this court's holding in *Fawcett.*

Worse yet is the language found in *Fawcett* at 249, 75 O.O. 2d at 293-294, 348 N.E. 2d at 147: "The second common issue presented is appellants' contention that the right of employers 'to terminate employment at will for any cause, at any time whatever, *is not absolute,* but limited by

principles which protect persons from gross or reckless disregard of their rights and interests, wilful, wanton or malicious acts or acts done intentionally, with insult, or in bad faith.' " (Emphasis added.)

*Fawcett* then states "[t]he holding in *Anderson* v. *Minter* (1972), 32 Ohio St. 2d 207, 291 N.E. 2d 457, *refutes that contention.* * * *" (Emphasis added.) *Id.* Thus, in Ohio, an employee, deemed at-will, may be discharged by an employer even if the discharge is in gross or reckless disregard of the employee's rights and even if the discharge is wilful, wanton or malicious and is done intentionally and with insult or in bad faith. Is it possible to even imagine another field of law where such rules exist? Yet in the decision we announce today, this court tells Ohio employers, when *Hazlett* v. *Martin Chevrolet, Inc.* (1986), 25 Ohio St. 3d 279, 25 OBR 331, 496 N.E. 2d 478[2] is considered, that persons who suffer the handicap of alcoholism or drug addiction must be hired, all other things being equal.

Today, this court now proceeds to tell an Ohio employer that it may not refuse to hire one who is afflicted with alcoholism or drug addiction, on that basis, but the court does nothing about the law that permits the same employer to discharge such an employee, for any reason or no reason, the very next day after the mandated hiring takes place. Consider the recent 1985 case, *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, where, among other things, this court at 103, 19 OBR at 263, 483 N.E. 2d at 153, citing *Fawcett* as authority said that "* * * [t]his doctrine [employment-at-will] has been repeatedly followed by most jurisdictions, including Ohio, which has long recognized the right of employers to discharge employees at will." (Citations omitted.) The *Mers* court then stated at 103, 19 OBR at 264, 483 N.E. 2d at 153, that abolishing the employment-at-will doctrine would "* * * place Ohio's courts in the untenable position of having to second-guess the business judgments of employers. The need for certainty and continuity in the law requires us to stand by precedent and not disturb a settled point unless extraordinary circumstances require it." It is hard for me to comprehend how the case now before us (just two years later) presents facts which are so extraordinary in circumstances that the second-guessing of the business judgments of employers is now deemed advisable.

Even more incongruous and irreconcilable with today's decision is *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114, where this court, just one year ago, held at paragraph one of the syllabus that "[p]ublic policy does not require that there be an exception to the employment-at-will doctrine when an employee is discharged for reporting to his employer that it is conducting its business in violation of law" and at paragraph two of the syllabus that "[a]n at-will employee who is discharged for reporting to his employer that it is con-

---

[2] It should be noted that *Hazlett* was a *discharge* case as opposed to the case now before us which is a *hiring* case.

ducting its business in violation of law does not have a cause of action against the employer for wrongful discharge." By those holdings, this court declined to permit an exception to the doctrine even on public policy grounds, a position now taken by an overwhelming number of states. The plain import of *Phung* is that an employee who knows that his employer is conducting its business in violation of law, should not tell *even* his employer about the violation, if the employee is employed in Ohio. To do so subjects the employee to discharge without recourse. The *Phung* court, at 102, 23 OBR at 261-262, 491 N.E. 2d at 1116, also said " '* * * [e]mployment contracts can be terminated at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of any employee's rights.' " (Citations omitted.) Now, in effect, we tell appellee herein that it must hire Wirth in spite of his alcoholism because he is handicapped but that he can be fired, under our past decisions, by appellee promptly thereafter on the basis that Wirth drives a green car — or for *any* cause.

Because I cannot square away this court's numerous and recent pronouncements in the field of hiring and discharge of employees with today's decision which mandates that certain specific persons be hired by employers in this state, and further upon public policy grounds, I dissent.