875 P.2d 1340

Ronald **BURRIS** and Earlene Burris, husband and wife, and The State of Arizona, ex rel., Grant Woods, Attorney General, and the Civil Rights Division of the Arizona Department of Law, Plaintiffs–Appellants, Cross–Appellees,

v.

**CITY OF PHOENIX, a body politic, Defendant–Appellee, Cross–Appellant.**

No. 1 CA–CV 90–0545.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 24, 1993.

Review and Cross–Petition for Review Denied July 6, 1994.*

* Corcoran, J., of the Supreme Court, voted to grant the Cross–Petition for Review on Issue A.

passed all of the required tests, and the City offered him the job as a fire fighter. However, later the City refused to hire Burris because he had a history of cancer, though he did not have the disease at the time.

Burris sued the City, and the trial court ruled that the City had discriminated against Burris on the basis of handicap and ordered the City to hire him as a fire fighter. Burris appealed from other rulings of the trial court, and the City cross-appealed from the hiring order.

We affirm the trial court's findings in all respects but two. Because we believe the trial court erred when it considered the evidence of settlement and because we believe the trial court erred in denying a request by Burris for an injunction against future use of discriminatory physical examination standards, we reverse on these two grounds.

Grant Woods, Atty. Gen. by Heather Sigworth, Sp. Asst. Atty. Gen., Judy Drickey–Prohow, Tucson, and Marton & Hall, P.A. by Kraig J. Marton and Terry F. Hall, Phoenix, for appellants/cross-appellees.

Lewis and Roca by Susan M. Freeman, Richard S. Cohen and Jane E. Reddin, Phoenix, for appellee/cross-appellant.

Ryley, Carlock & Applewhite, P.A. by Linda H. Miles and Michael D. Moberly, Phoenix, for amicus curiae—City of Bisbee.

Barbara Hoffman, Silver Spring, MD, for amicus curiae—Nat. Coalition for Cancer Survivorship.

## OPINION

CLABORNE, Judge.

Appellant Ronald Burris ("Burris") applied for a fire fighter position with Appellee City of Phoenix ("the City"). Burris took and

**I**

In early 1987, Burris applied for a fire fighter position with the City. He took and passed written and physical agility tests, and he was rated "one plus" (one of the highest ratings) on his oral interview, but he was not offered a fire fighter recruit or trainee position. After some of the selected applicants dropped out, the Phoenix Fire Department offered Burris a fire fighter trainee position.[1] As a result of this offer, Burris filled out various employment and payroll forms, went to the City Occupational Health Center for cardiac stress testing, and was given a physical examination. At the time of the physical, no one told Burris that the examination was conducted for the Arizona Public Safety Retirement System.[2]

While Burris was at the doctor's office before his physical examination, he indicated on a medical history form that he had a history of cancer. The record is clear that

---

1. Fire fighter trainees worked in the fire department resource management section. Generally, trainees would be promoted to recruit when the next academy class convened. The trainee position was not considered to be a career or permanent position and was characterized as a training time for those who sought to go into the next recruit class.

2. The Public Safety Retirement System is created by statute and administers pension funds for approximately 130 participating public safety employers. A.R.S. § 38–842 et seq. (Supp.1992). A local pension board administers each participating employer's pension plan. The local boards establish medical eligibility standards and retain medical doctors for their participating groups.

Burris had testicular cancer and was treated surgically (involving the removal of a testicle) and by radiation. The cancer did not recur, and according to Burris's doctor, Burris was completely cured of cancer. The City's doctor reviewed Burris's history form and told him that due to his history of cancer, the City would not hire him, that other people in similar circumstances had been rejected, and that it was the policy and nothing could be done about it. Although the doctor said there was no reason to continue the examination, Burris insisted and the doctor proceeded with the physical. The doctor found that Burris had a physical impairment, a missing right testicle, but that there was nothing that would physically prevent Burris from doing the work of a fire fighter. The reason the doctor indicated that Burris was medically rejected for employment was because he had a history of cancer, and the medical standards the doctor applied dictated mandatory rejection of any applicant with a history of cancer.

Burris was told by Chief Dodd of the fire department that he had failed the physical examination and that the City could not hire him.

In December, 1987, Chief Dodd told Burris that he could be interviewed again. Following the interview, a captain on the fire department who was on the interview board told Burris that he would not be considered for a position because he had not done as well in the oral interview as he had done in the previous interview. He also told Burris that all the board members had been told before the second interview that he had a history of cancer.

Thereafter, Burris filed a charge of handicap discrimination against the City with the Arizona Civil Rights Division. The statutorily required conciliation efforts failed, *see* Ariz.Rev.Stat.Ann. ("A.R.S.") section 41–1481(B) (1992), and, after the Civil Rights Division told Burris he could sue, a lawsuit was filed against the City. His complaint alleged a violation of the Arizona Civil Rights Act ("ACRA") by discriminating against him

on the basis of handicap. He asked for an injunction enjoining the City from engaging in such practices, an order to allow him to be hired as a fire fighter recruit, an award of back pay with fringe benefits including seniority from the date of the City's original offer to hire him, "front pay," [3] damages for mental distress, and other compensatory damages. The Attorney General was allowed to intervene.

A trial was held with an advisory jury. The court held that there was no tort of wrongful failure to hire. The trial court further ruled that "the City of Phoenix violated the ACRA in that they failed to hire Mr. Burris solely because of their perception that he was handicapped, and not because of any legitimate legal basis." The trial court ordered the City to hire Burris as a fire fighter trainee/recruit and denied Burris's claims for seniority, back pay and front pay. Burris was awarded attorney's fees.

The City appealed from the trial court's orders and final judgment. Burris and the State cross-appealed. This Court realigned the parties to designate Burris and the State as Appellants/Cross–Appellees and the City as Appellee/Cross–Appellant.

## II

■ This case cannot be resolved without first determining whether a history of cancer is a "handicap," according to ACRA. In this respect, the trial court said:

THE COURT FINDS that the City of Phoenix violated the ACRA in that they failed to hire Mr. Burris solely because of their perception that he was handicapped, and not because of any legitimate legal basis.

. . . .

Court and counsel have argued over the definition of "handicap." The legislature seems to favor a narrow definition, while the Appellate Courts and the Federal system opt for a more liberal definition. In this case, the City treated Mr. Burris as if he were handicapped. They thought and

---

**3.** Front pay "refers to future lost earnings." *Hansard v. Pepsi–Cola Metro. Bottling Co., Inc.,* 865 F.2d 1461, 1469 (5th Cir.1989); *Worrell v.*

*Multipress, Inc.,* 45 Ohio St.3d 241, 543 N.E.2d 1277, 1283 (1989).

perceived him to have a limitation when they accepted the Pension Board's standards, and then refused to hire him.

To now say that they are vindicated because he doesn't fall into the *Statutory* definition of handicap, is not appropriate.

Equity and public policy will not allow such a result.

The City argues that a history of cancer does not meet the statutory definition of "handicap" and that even if it does, the trial court erred in expanding the definition to include individuals with a "perceived" handicap. A "handicap" is defined in A.R.S. section 41–1461(4) (1992), as follows:

4. "Handicap" means a physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment....

The statute which makes an employment practice unlawful says:

**B.** It is an unlawful employment practice for an employer:

1. To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, age, *handicap* or national origin.

A.R.S. § 41–1463(B)(1) (1992) (emphasis added).

We commence with some general rules. "The Arizona Civil Rights Act is remedial legislation designed to eliminate discrimination based on race and other classifications," including handicaps. *Arizona Civil Rights Div. v. Hughes Air Corp.*, 139 Ariz. 309, 313, 678 P.2d 494, 498 (App.1984). Remedial statutes should be liberally construed. *Id.* Whether cancer is a handicap in Arizona is a matter of law. *See Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 538 A.2d 794 (1988); *Babcock & Wilcox Co. v. Civil Rights Comm'n*, 31 Ohio St.3d 222, 510 N.E.2d 368 (1987); *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 496 N.E.2d 478 (1986); *Consolidated Freightways, Inc. v. Cedar Rapids Civil Rights Comm'n*, 366 N.W.2d 522 (Iowa 1985).

A "handicap" under section 41–1461(4) entails a *physical impairment.* The word "impair" is defined as "to damage or make worse by or as if by diminishing in some material respect." *Webster's Ninth New Collegiate Dictionary 603 (1984).* Defendant's cancer, which caused the permanent loss of a testicle, meets this definition, liberally construed.

To be a handicap under the statute, the condition must also substantially restrict or limit an individual's general ability to secure, retain, or advance in employment. Burris introduced expert testimony at trial regarding difficulties cancer sufferers have in job hiring and promotions. The expert testified that a history of cancer affects an individual's ability to be hired, restricts his or her employability, and likely would have a lingering effect on the ability to progress with an employer. He based that opinion on his experience and research that show that employers have numerous misconceptions about cancer regarding the effect of the disease even on people who no longer have cancer. An article in evidence stated that approximately twenty-five percent of the five million people in the United States with a cancer history experienced disparate treatment in employment solely because of their medical histories. The expert testified that since at least 1977, studies on the subject have consistently found that people with cancer have significant problems in the work place, both in securing new employment and in keeping jobs they had at the time the cancer was diagnosed.

■ We do not agree with the City's claim that the expert was not qualified under Arizona Rules of Evidence 702. As we have often said, such a decision is a discretionary one with the trial court. *Bliss v. Treece*, 134 Ariz. 516, 518, 658 P.2d 169, 171 (1983). The expert's testimony was certainly relevant to the question of whether a person with a history of cancer is restricted in the ability to secure employment. The trial court did not abuse its discretion in allowing this testimony.

■ It should also be mentioned that there is little question that cancer history raises barriers to employment opportunities which are unrelated to a person's qualifica-

tions. *See, e.g.,* Feldman, *Work and Cancer Health Histories,* American Cancer Society, California Division (1982); Hoffman, *Cancer Survivors at Work: Job Problems and Illegal Discrimination,* 16(1) Oncology Nursing Forum 39 (1989); *School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). There is sufficient evidence to conclude that cancer is a handicap covered by A.R.S. section 41–1463(B)(1).

However, this is not the end of the inquiry. The trial court found that the City discriminated against Burris on the basis of his *cured* cancer. Therefore, we must ask ourselves if the statute covers one who no longer has cancer, but is denied a job on the basis of a history of cancer.

The City's argument is simple. Even if cancer can be considered a handicap, the statute does not extend to a history of a handicap. The court in *Barnes v. Washington Natural Gas Co.,* 22 Wash.App. 576, 591 P.2d 461 (1979), said:

> It is the intent of the legislature to prohibit discrimination in employment against a person with a sensory handicap. It would be an anomalous situation if discrimination in employment would be prohibited against those who possess the handicap but would not include within the class a person "perceived" by the employer to have the handicap.
>
> The essence of unlawful employment discrimination is the application of unreasonable generalizations about people to the hiring, promotion and discharge of workers....
>
> ....
>
> ... It would defeat [the] legislative purpose to limit the handicap provisions of the law against discrimination to those who are actually afflicted with a handicap, such as epilepsy, and exclude from its provision those perceived as having such a condition. Prejudice in the sense of a judgment or opinion formed before the facts are known is the fountainhead of discrimination engulfing medical disabilities which prove on examination to be unrelated to job performance or to be nonexistent. The intent of the law is to protect workers against such prejudgment based upon insufficient information. The law's application, therefore, should not be limited to those who actually have handicaps, excluding those who are discriminated against in the same way because they are only thought to have handicaps.

591 P.2d at 464–65.

■ The City believed that Burris was not qualified for the fire fighter's job solely on the basis of his history of cancer. The record shows that without any history of cancer, he was qualified for the job. The fact that a handicap is not currently disabling makes it no less egregious for an employer to discriminate against the person with the handicap. The California Supreme Court in *American Nat'l Ins. Co. v. Fair Employment and Hous. Comm'n,* 32 Cal.3d 603, 186 Cal.Rptr. 345, 651 P.2d 1151 (1982), stated:

> The law clearly was designed to prevent employers from acting arbitrarily against physical conditions that, whether actually or potentially handicapping, may present no current job disability or job-related health risk.
>
> . To limit "handicap" to present disabilities would defy logic. In effect that would proscribe discrimination based on current, manifest, physical disfunction while allowing exclusion on the basis of conditions— like high blood pressure—that may handicap in the future but have no presently disabling effect. We should not conclude that the Legislature intended any such anomalous result.

651 P.2d at 1155. *See also Nathanson v. Medical College of Pa.,* 926 F.2d 1368 (3d Cir.1991). We hold that A.R.S. section 41–1463 prohibits employment discrimination on the basis of a history of cancer and affirm the trial court's finding that the City unlawfully discriminated against Burris on the basis of handicap.

The City claims, however, that there was no evidence that it discriminated against Burris on the basis of his condition. Rather the City argues it was only adhering to State Public Safety Retirement System (pension board) standards, which were not under its

control, when it declined to hire Burris. The evidence in the record is to the contrary.

The doctor who conducted the physical examination of Burris testified that both the police and fire departments had instructed him not to use the pension board minimum standards for height and weight because those standards tended to discriminate against women. Thus, the doctor had not rejected any applicants because they did not meet the height and weight standards. Despite the City's protestations that it had no control over the standards applied by the pension board, it does not dispute that it told the doctor not to use the height and weight standards nor does it give any explanation why it could not have similarly told the doctor to not apply a blanket rejection of any applicant with a history of cancer. Therefore, like the trial court, we do not accept the City's argument that it could not have hired Burris because he was rejected under the pension board standards.[4]

These facts also undercut the argument that there was no requisite intent to discriminate. Burris showed that he applied for the available position; that he was qualified for it; and that he was rejected because of discrimination based on his history of cancer. He therefore made a *prima facie* case, and the burden then shifted to the employer to show some legitimate, nondiscriminatory reason for the refusal to hire. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The City's argument that it did not intend to discriminate because it was only following pension board guidelines does not hold water. If the guidelines followed by the City are discriminatory, the City failed to meet its burden.

The City also argues that it was not required to hire Burris because, since he did not qualify under the pension board standards, he was not a "qualified" handicapped person. Yet, under the definition of "qualified handicapped individual" under A.R.S. section 41–1461(7),[5] Burris was clearly qualified.

The final City argument is that the trial court abused its discretion by ordering the City to hire Burris when the evidence showed that the City knew of Burris's untruthfulness on previous job applications.

There was sufficient evidence for the trial court to do what it did. It heard and observed the witnesses who testified on this issue. That evidence was sufficient to support its decision. Accordingly, we conclude that the trial court did not abuse its discretion in ordering the City to hire Burris as a fire fighter trainee/recruit.

### III

■ Burris and the City each filed a motion *in limine* concerning the exclusion or admission of settlement discussions required by A.R.S. section 41–1481 that took place between the Civil Rights Division and the City. Initially, the trial court excluded the evidence; but, just before opening statements, the court reversed itself and admitted the discussion. The trial court ruled that settlement discussions were admissible concerning Burris's failure-to-hire claim but not on his wrongful discharge claim. Burris continued to object during trial and moved for a mistrial. The motion was denied. At the end of the trial, the court denied Burris's claims for seniority, back pay and "front" pay, saying

[h]e had an opportunity to become employed as a firefighter after he filed his Civil Rights administrative claim. The City offered to place him in the Academy

---

**4.** We also observe that the administrator for the Public Safety Retirement System testified that he had received calls from a number of municipalities that asked whether they could hire someone who had failed the pension board's physical. He told them that nothing in the retirement plan gives guidance as to whether they could hire such a person, and he advised them to consult with their own legal counsel on the question. It appears that the City would have had some lee-

way in determining whether Burris could have been hired despite his cancer history.

**5.** "Qualified handicapped individual" means a person with a handicap who within reasonable accommodation is capable of performing the essential functions of the particular job in question within the normal operation of the employer's business in terms of physical requirements, education, skill and experience.

and he decided to "roll the dice" on his wrongful discharge claim. He lost, and equity will not allow him to benefit further.

Burris argues on appeal that admission of evidence regarding the settlement discussions and tender of settlement offers violated Arizona Rules of Evidence 408.[6] The City maintains that the trial court properly admitted the evidence for purposes other than establishing liability, specifically for mitigation of damages and on the issue of Burris's credibility.

By its terms, Rule 408 does not bar the use of evidence of settlement offers when it is offered for a relevant purpose other than proving the liability for or validity of the claim or its amount. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 420, 758 P.2d 1313, 1322 (1988); *Campbell v. Mahany*, 127 Ariz. 332, 334, 620 P.2d 711, 713 (App.1980). The trial court did not consider evidence of the settlement offer on the issue of the validity of Burris's claim; instead, the court considered the offer on the question of mitigation of Burris's damages. Rule 408 does not bar this use of the evidence of the settlement discussions and offer.

However, Burris claims that admission of evidence of the settlement discussions and offers violated A.R.S. section 41–1481(B). This section provides in relevant part:

> If the [civil rights] division determines after such investigation that there is reasonable cause to believe that the charge is true, it shall enter an order containing its findings of fact and shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation and persuasion.... *Nothing said or done during and as a part of such informal endeavors may be made public by the division, its officers or employees or used as evidence in a subsequent proceeding without the written consent of the persons concerned.*

(Emphasis added.)

The parties dispute whether the legislature intended section 41–1481(B) to be more restrictive than Rule 408. They dispute whether the legislature intended by that statute to preclude evidence that a party seeking damages or attorney's fees incurred them needlessly by rejecting a "make whole" settlement offer. Further they dispute whether, if such is the statutory intent, section 41–1481(B) unconstitutionally intrudes on the exclusive rule-making authority of the Arizona Supreme Court. *See* Ariz. Const. art. III and art. VI, § 5; *Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988); *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 444–45, 719 P.2d 1058, 1060–61 (1986).

We need not decide these issues in this case because the job offer in question was conditioned on Burris releasing the City from monetary liability for its acts. Robert Burrell, who conducted conciliation discussions for the Civil Rights Division, testified that the City never made an unconditional job offer to Burris. And the exhibits bear this out. By the unsuccessful conclusion of settlement discussions, Robert Burrell had communicated to the City that Burris would be willing to accept the City's offer to enter the next fire fighter class, but only "with the understanding that he is not relinquishing his claim to further remedy." The City responded, "The City of Phoenix is only interested in a global settlement. Therefore, we will not be putting Mr. Burris in the next class without complete settlement of all claims."

The United States Supreme Court has found that a conditional reinstatement offer need not be accepted by a Title VII claimant for the purpose of mitigating damages:

---

**6.** Rule 408 reads:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The claimant's obligation to minimize damages in order to retain his right to compensation does not require him to settle his claim against the employer, in whole or in part. Thus, an applicant or discharged employee is not required to accept a job offered by the employer on the condition that his claims against the employer be compromised.

*Ford Motor Co. v. Equal Employment Opportunity Comm'n,* 458 U.S. 219, 232 n. 18, 102 S.Ct. 3057, 3066, n. 18, 73 L.Ed.2d 721 (1982); *see also Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481 (10th Cir.1989).

Similarly we find that a Title VII claimant does not forfeit his entitlement to attorney's fees by rejecting a job offer conditioned, as this one, on relinquishing his monetary claims.

Because the trial court inappropriately considered Burris's rejection of a conditional job offer in deciding issues of attorney's fees, back pay, and seniority, we remand those issues for reconsideration in light of our holding.

### The Cross–Appeal

#### A.

■ Burris alleged wrongful failure to hire on the theory that a tort action arose from a violation of the public policy found in ACRA. The trial court granted the City's motion for partial summary judgment on the grounds that there is no such tort.

Burris relies on *Broomfield v. Lundell,* 159 Ariz. 349, 767 P.2d 697 (App.1988), claiming that because law imposes a duty not to discriminate because of a physical handicap, and because the public policy reflected in ACRA and as contained in the City's merit rules allows a handicapped applicant to sue in tort, ACRA does not limit tort remedies.

We do not agree. First, we have found no state or federal court that has recognized the tort of wrongful failure to hire even though federal law and the laws of many states prohibit discrimination in hiring on the basis of such factors as race, national origin, sex or handicap.

Second, the *Broomfield* court held that ACRA does not *preempt* a tort action for wrongful discharge, a previously recognized common law cause of action. *Broomfield,* 159 Ariz. at 357, 767 P.2d at 705. The court stated, "We base this on the absence of express language in the Act indicating preemption as well as the decisions in *Wagenseller* [*v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985) ]; *Ford* [*v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987) ]; and *Bernstein* [*v. Aetna Life and Casualty,* 843 F.2d 359 (9th Cir.1988) ]. *Id.* Significantly, the *Broomfield* court did not state, and no other court has stated, that ACRA supports the creation of a tort action that was not recognized at common law.

We conclude that ACRA does not create a common law right that protects job applicants from wrongful failure to hire. Although wrongful discharge is a tort, the duty breached is created by the contractual employment relationship between the parties, even if it is a mere at-will contract. *See Wagenseller,* 147 Ariz. at 381, 710 P.2d at 1036. The trial court was correct in holding that no tort for wrongful failure to hire exists in this case. *See Wagner v. Sanders Assoc.,* 638 F.Supp. 742 (C.D.Cal.1986).

#### B.

Because we affirm the trial court's summary judgment on the wrongful failure to hire issue, we need not consider the claim that the trial court should have instructed the jury on the law of illegal conditions subsequent.

#### C.

■ Burris claims that ACRA, specifically A.R.S. section 41–1481(G), gives the trial court the right to grant remedies other than equitable relief. After this case was at issue, *Timmons v. City of Tucson,* 171 Ariz. 350, 830 P.2d 871 (App.1991), was decided. It held that monetary damages for emotional distress and mental anguish are not available in statutory employment discrimination cases. *Id.* at 354, 830 P.2d at 875. *Timmons's* reasoning is correct, and we follow it. Also, we believe that Burris was not entitled to a jury trial on his claim under ACRA. As did *Timmons,* we look to Title VII case law

as persuasive in interpreting our act; this case law indicates that Title VII actions are equitable in nature and consequently, there is no right to a jury trial. *See, e.g., Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979). The trial court did not err in utilizing only an advisory jury.

### D.

 Burris claims that once the trial court found that the City's application of the pension board physical examination standards was discriminatory, the court should have enjoined the City from excluding from employment other applicants who did not meet the standards. The City responds that the fire department has persuaded the pension board to set up a new system which eliminates automatic medical exclusions in favor of a case-by-case analysis with independent review. In light of the new standards, the City asserts that a prospective injunction was unnecessary.

Injunctive relief is not only appropriate but is necessary to eliminate unlawful employment practices. *Civil Rights Div. of Ariz. Dep't of Law v. Superior Court,* 146 Ariz. 419, 424, 706 P.2d 745, 750 (App.1985). Merely saying that a problem has been solved is not enough. There must be affirmative proof that such discriminatory practices have been eliminated. The trial court erred in refusing to enter an injunction based on the record before it. We recognize that since the ruling, the City may have cured the discriminatory practice and have proof in that respect. Moreover, the Federal Americans With Disabilities Act is now in effect. Accordingly, we remand the question of whether an injunction is necessary now.

### E.

As to the attorney's fee issue, the trial court did not abuse its discretion in not awarding attorney's fees to the City. A.R.S. section 12–341.01 is permissive, and whether an award should be made is left to the sound discretion of the trial court. *Lacer v. Navajo County,* 141 Ariz. 392, 395, 687 P.2d 400, 403

(App.1984). Although the City prevailed in some aspects of the litigation, it did not prevail on others and, on balance, we cannot say that the discretion of the trial court was abused.

Both parties seek attorney's fees on appeal. Because both parties have prevailed in some aspects of this appeal, and the provision allowing attorney's fees is permissive, we decline to award fees to either party.

### CONCLUSION

We reverse the denial of back pay and seniority, and the amount of the attorney's fees awards to Burris and remand for the trial court to reconsider those rulings in light of our holding that evidence of conditional settlement offers was inappropriately considered in this case. We also reverse and remand the trial court's denial of the request for an order enjoining the City from applying physical examination standards that discriminate against applicants for fire fighter positions on the basis of handicap. On all other issues raised in both the appeal and cross-appeal, we affirm the trial court.

KLEINSCHMIDT, C.J., and FIDEL, J., concur.