**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-4340 and 13-4764
_____

JULIE DIAZ

v.

SAUCON VALLEY MANOR INC;
NIMITA KAPOORATIYEH,
aka Nemita Atiyeh
aka Nemo Aiyah

Saucon Valley Manor, Inc and Nimita Kapooratiyeh,
Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 5-12-cv-00433)
Magistrate Judge:  Honorable Timothy R. Rice

_____

Argued on July 8, 2014

Before:  RENDELL, CHAGARES and JORDAN, <u>Circuit Judges</u>

(Opinion filed: August 27, 2014)

Alan S. Fellheimer, Esquire **(Argued)**
John J. Jacko, III, Esquire
Fellheimer & Eichen
50 South 16th Street
Two Liberty Place, 34th Floor
Philadelphia, PA   19102

Counsel for Appellant

Tiffanie C. Benfer, Esquire
Virginia L. Hardwick, Esquire **(Argued)**
Hardwick Benfer, LLC
179 North Broad Street
Doylestown, PA   18901

Mark D. Risk, Esquire
60 East 42nd Street
Suite 4700
New York, NY   10165

                              Counsel for Appellee

--------------

**O P I N I O N**

--------------

**RENDELL**, Circuit Judge:

Appellants, Saucon Valley Manor, Inc., and Nimita Kapoor-Atiyeh, appeal from the judgment of the District Court, urging that it erroneously denied their motion for a directed verdict and their post-trial motion to amend the verdict.  Appellants also appeal the District Court's order awarding attorney's fees and costs to Appellee, Julie Diaz.  The jury found that Appellants had discriminated against Diaz in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*[1]  The jury also found that Kapoor-Atiyeh interfered with Diaz's right to unpaid leave under the Family and Medical

--------------

[1] "The language of the PHRA is also substantially similar to [the ADA] provisions, and we have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).

2

Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.* For the reasons set forth below, we will affirm.

## I. *Background*

### a. *Factual Background*

Diaz was employed as a cook at Saucon Valley Manor in Hellertown, Pennsylvania from December 2007 until July 2010. During that time she received several positive performance evaluations. However, she also tested positive for alcohol during a random screening while at work on March 19, 2009. She was arrested for Driving Under the Influence ("DUI") on June 27, 2009, which resulted in her placement in an Accelerated Rehabilitative Disposition program ("ARD program"). She also began attending Alcoholics Anonymous ("AA") meetings shortly after her DUI. Moreover, Diaz recounted at trial that after her DUI, she "realized what a struggle it was going to be because [she] could not stop." A. 638a.

Diaz claimed that prior to her termination she told her direct supervisor, Cindy Fox, about the DUI, her struggles with alcoholism, and her desire to get help. Ms. Fox corroborated this in her testimony. Indeed, Ms. Fox's employee review on June 8, 2010, indicates that she knew Diaz was having problems with something and planned to seek treatment. A. 729a ("Like many of us, Julie has had personal issues in her life outside of work. But she is a Fighter and is doing the right thing by getting help.").

In June of 2010, Diaz was charged with public drunkenness. As a result of this citation she was charged with violating the conditions of her ARD program. Consequently, Diaz was required to attend a hearing on July 22, 2010. Diaz testified that

3

she told Ms. Fox that she could not work on July 22 because of the hearing. Ms. Fox contradicted this testimony, claiming that Diaz did not inform her that she would not be at work. The record indicates that Diaz was terminated on July 22 for, according to her employer, failing to call or show up for work.

Following the July 22 hearing, Diaz went to a rehabilitation facility from July 23, 2010 to August 23, 2010. Diaz testified that she called Ms. Fox immediately after she learned that she would be going to inpatient treatment. Ms. Fox acknowledged receiving two notes on July 23 regarding Diaz, one of which informed her that Diaz would not be at work because she was in treatment. The record contains a handwritten note dated July 22, 2010 signed by Appellant Kapoor-Atiyeh. The note reads: "If Julie Diaz does not show to work (we have heard outside rumors and she called [Ms. Fox and] said – public drunkenness doing a 28 day Rehab.) Officially, she is terminated No FMLA applied for . . . Unofficially – we will discuss it." A. 733a.

Diaz was admitted to the Keystone Center in Chester, PA on July 23, 2010. Upon arrival, she was immediately placed in an alcohol detoxification unit for a week. She was not allowed any contact with anyone outside of the facility during that time. She also testified that she experienced withdrawal symptoms. The Keystone Center sent notice, dated August 13, 2010, that Diaz was receiving treatment at its facility. Diaz claimed that she spoke with Ms. Fox a few times while in treatment, and during their last conversation on August 19, Ms. Fox informed Diaz that she had been terminated.

b. *The District Court Opinion*

1. *Rule 50(a) Motion and Rule 59(e) Motion*

4

Appellants primary basis for appeal is Diaz's failure to provide sufficient evidence or expert testimony to prove that she suffered from alcoholism. Appellants pressed this argument several times below and in their motion for a directed verdict under Fed. R. Civ. P. 50(a). The District Court denied this motion from the bench. In doing so, the Court specifically referenced *Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000), explaining that it did not think *Marinelli* stood for the proposition that Appellee was required to present expert testimony to prove that she had alcoholism. Rather, the Court explained, the case says "you look at the EEOC regs and that the plaintiff can describe treatment and symptoms to allow a jury to determine if the plaintiff had suffered from a disability." A. 684a-85a. The District Court elaborated on this point:

> We are not talking about evidence of some medical condition involving the central nervous system and nobody can pronounce the word and we don't know what it means where we need an expert. Alcoholism is a commonly encountered form of substance abuse in our society, and I think you look at the jury voir dire how many hands went up when they said there was alcohol abuse in the family. There was a significant amount.

A. 686a.

In denying the motion, the District Court further explained that it believed there was sufficient evidence for the question to go to the jury. Specifically, the District Court noted that Diaz "had a DUI, she was in AA, she drank half a gallon of alcohol at night according to one exhibit. She was in rehab for 28 days, she was in an ARD program related to her DUI. The testimony of her husband, her brother and herself concerning her alcohol abuse." A. 685a.

5

Importantly, the parties stipulated that "[a]lcoholism is a disability under the ADA." A. 689a. This stipulation relieved Diaz of having to prove that her alcoholism met the definition of a disability under the ADA, and instead, only required that she prove that she had alcoholism.[2] Accordingly, this stipulation was included in the jury instructions regarding the first element of Diaz's ADA discrimination claim, which read:

> With regard to the first element, the term disability means a physical or mental impairment that substantially limits a major life activity or any activity of central importance to everyday life, such as sleeping, eating, caring for oneself, speaking, thinking, and interacting with others. The parties have agreed that if you find that Ms. Diaz suffered from alcoholism, alcoholism would be a disability under the ADA's definition of that term.

A. 555a.

These instructions were read without objection. In addition to their argument regarding expert testimony, in their motion to amend the verdict pursuant to Fed. R. Civ. P. 59(e), Appellants argued that Diaz failed to show that her alcoholism substantially limited a major life activity. The District Court responded:

> Ms. Diaz needed to show only that she suffered from the medical condition of alcoholism.[] Once the jury concluded that she had such a condition, it was required to find—based on the stipulation and pursuant to the jury instructions, which were read without objection—that she had a disability under the ADA.
> * * *
> [Appellants'] contention . . . contradicts the stipulation that unambiguously states alcoholism is a disability under the ADA.

A. 7a-8a.

---

[2] The stipulation was made in exchange for Diaz's agreement to forego a jury instruction on the alternate "regarded as" definition of disability. SA 142 n.2; *see also* Appellee's Br. at 30; 42 U.S.C. § 12102(1)(C) & (3).

6

## 2. *The Fee Award*

In a separate opinion the District Court analyzed Diaz's petition for attorneys' fees and costs. The District Court reduced Appellee's award of attorneys' fees from $445,248.00 requested to an award of $375,650.50. The Court also reduced Appellee's award of costs from $16,495.93 requested to an award of $9,514.06. The District Court provided a thorough explanation of the reasoning behind these reductions.

The District Court began by explaining that Diaz, as the prevailing party on FMLA, ADA and PHRA claims, was entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 2617(a)(3); 42 U.S.C. § 12205; 43 Pa. Cons. Stat. § 962(c)(4)(c.2). The District Court then sought to follow the Supreme Court's direction that a "party must show that its fees are reasonable by submitting evidence 'supporting the hours worked and rates claimed.'" A. 13a (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Finally, the District Court noted that "[r]easonable attorney fees are determined first by calculating the lodestar, or the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id*. (internal quotation marks omitted).

The Court proceeded to outline its basis for determining that Appellee's attorneys' hourly rates were reasonable, which it defined as rates that "'are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience and reputation.'" A. 25a-26a (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). These rates are considered the "prevailing market rates." The District Court relied on *McGuffey v. Brinks*, 598 F. Supp. 2d 659, 669-70 (E.D. Pa. 2009), for the

7

proposition that it could consider rates in and around Philadelphia to decide whether Diaz's attorneys' submitted rates were in line with the appropriate prevailing market rate.

The District Court concluded that "[t]he prevailing market rate, therefore, may be the Philadelphia market rate when a case is tried in Philadelphia because the attorneys practice within that district and litigants are located there." A. 24a. As to Diaz's attorneys' stated rates, the Court noted that Appellee submitted three verifications, two from attorneys not involved in this litigation, which all assert that the challenged $400.00 per hour rate of one of Diaz's attorneys was reasonable.

Appellants also argued that Diaz's attorneys' hourly rates in this case amounted to a contingency fee multiplier. The District Court gave this argument little weight because it had already determined that Appellee's rates were equivalent to the prevailing market rate. As such, according to the District Court, the fact that Appellee's attorneys charged lower rates in other cases, was insignificant to the Court's analysis.

## II. *Discussion*

### a. *Proof of Alcoholism*

We note, as an initial matter, that the parties stipulated that alcoholism is a disability under the ADA. This relieved Diaz of having to prove that her alleged impairment of alcoholism met the definition of "disability" under the ADA by showing

that her alcoholism substantially impaired one or more major life activities.[3] Instead, Diaz needed to prove that she suffered from alcoholism, which of course, Appellants contend she failed to do.

Appellants urge that the District Court should have granted their Rule 50 motion. Denial of a motion under Rule 50(a) is subject to plenary review. "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

In *Marinelli v. City of Erie*, we wrote, "the necessity of medical testimony turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge." 216 F.3d at 360. Relying on this proposition, the District Court concluded that "the jury was capable of concluding whether Diaz suffered from alcoholism without expert testimony." A. 9a n.7. The District Court decided that the fact that Diaz tested positive for alcohol at work, was arrested for driving under the influence, was trying to stop drinking by going to outpatient treatment, drank every night after work, and was cited for public drunkenness, was sufficient for a jury to make a finding that she suffered from alcoholism.[4]

---

[3] Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The statute contains a non-exhaustive list of "major life activities," which includes sleeping, working and caring for oneself. *Id*. at (2)(A).
[4] Appellants note that the District Court, in denying the Rule 50 motion on the record, mentioned evidence that had not been included as part of the record. The District Court

9

*Marinelli* is indeed the standard by which our district courts should determine whether expert testimony is necessary to prove a disability under the ADA, but in this case—because of the stipulation—the question is narrowed to what is necessary to prove alcoholism. According to Appellants, the evidence upon which the District Court relied was not enough to prove that Diaz suffered from alcoholism because alcoholism is a complicated disease that must be diagnosed by a medical professional. Appellants urge that what was described at trial evidences alcohol abuse, and that a lay person is not qualified to conclude that Diaz suffered from alcoholism based on that evidence.[5]

---

referenced, in front of the jury, that Ms. Diaz drank half a gallon of alcohol a day, which the Court later acknowledged was evidence that was not presented to the jury. The Court determined that there was still sufficient evidence from which the jury could find that Diaz suffered from alcoholism. We agree, and therefore, view this error as harmless.

[5] What is the difference between alcoholism and alcohol abuse?
Alcohol abuse is a pattern of drinking that results in harm to one's health, interpersonal relationships, or ability to work. Manifestations of alcohol abuse include the following:
- Failure to fulfill major responsibilities at work, school, or home.
- Drinking in dangerous situations, such as drinking while driving or operating machinery.
- Legal problems related to alcohol, such as being arrested for drinking while driving or for physically hurting someone while drunk.
- Continued drinking despite ongoing relationship problems that are caused or worsened by drinking.
- Long-term alcohol abuse can turn into alcohol dependence.
Dependency on alcohol, also known as alcohol addiction and alcoholism, is a chronic disease. The signs and symptoms of alcohol dependence include—
- A strong craving for alcohol.
- Continued use despite repeated physical, psychological, or interpersonal problems.
- The inability to limit drinking.
Appellants' Br. at 25 n.3. (quoting literature from the Centers for Disease Control and Prevention).

Furthermore, Appellants conceded at oral argument that they are not advocating for a strict rule requiring expert testimony or medical diagnosis to prove alcoholism, but, rather, that the evidence presented at trial was insufficient to prove Diaz suffered from alcoholism. We disagree.

We find no basis to disturb the jury's findings. *See Abrams v. Lightolier*, 50 F.3d 1204, 1218 (3d Cir. 1995) ("A jury verdict will not be overturned unless the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief."). The fact that Diaz had a DUI, drank every day, was unable to stop, tested positive for alcohol at work, and went to a 28-day inpatient treatment facility experiencing withdrawal while there, could be enough for a rational juror to conclude that she suffered from alcoholism.

In our view, the stipulation was a concession made for tactical reasons—*see supra* n.2—and it presents such a unique circumstance that, in this context, we find no need to follow the holdings of some state courts and adopt a rule requiring medical testimony to prove alcoholism as a matter of federal law. [6] Indeed, in most, if not all, ADA cases

---

[6] *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794, 806 (N.J. 1988) ("Given the complexity of the many diagnostic procedures involved, expert medical testimony is required to establish the fact of the employee's alcoholism."); *Conn. Gen. Life Ins. Co., v. Dep't of Industry, Labor & Hum. Rel.*, 273 N.W.2d 206, 212-13 (Wis. 1979) ("Alcoholism is a disease. Its diagnosis is a matter of expert medical opinion proved by a physician and not by a layman."); *Babcock & Wilcox Co., v. Ohio Civ. Rights Com'n*, 510 N.E.2d 368, 369-70 (Ohio 1987) ("Something more than the self-serving testimony of the person claiming the handicap might be needed to demonstrate an otherwise hidden disability."); *Greater Cleveland RTA v. Ohio Civ. Rights Comm'n*, 567 N.E.2d 1325, 1327 (Ohio Ct. App. 1989) ("There must be, at a minimum, medically qualified evidence to support a finding that a person is an alcoholic.").

11

involving alcoholism, a plaintiff still must prove that her alcoholism substantially limited a major life activity. Based on these facts, we have no occasion to consider whether Diaz met this burden because the stipulation relieved her of having to establish any substantial limitation.

### b. *The Fee Award*

Appellants argue, as their final basis for appeal, that the District Court erred in its award of attorney's fees. Appellants urge remand in light of the District Court's use of an allegedly improper community market rate in calculating the lodestar. While we review de novo the legal standards applied to an award of fees, we review the reasonableness of the award for abuse of discretion. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001). We have cautioned against disturbing a district court's decision of the reasonable hourly rate, unless it is clearly erroneous. *Interfaith Community Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) ("*ICO*").

Under the FMLA and the ADA, a prevailing party is entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 2617(a)(3) ("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."); 42 U.S.C. § 12205 ("In any action . . . the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ").

In *ICO*, we stated that this Court, and our lower courts, should apply the "forum rate" rule in determining an attorney's reasonable rate subject to two exceptions, neither

12

of which is applicable in this case.[7] 426 F.3d. at 705. The objective of the forum rate rule is to assist a court in defining the relevant prevailing market that establishes the reasonable rate. As adopted by this Court, the rule dictates that an attorney's rate should be set based on the prevailing community market rate where the suit is litigated.[8] *Id.*

Appellants insist that the District Court should have applied a rate that was district-wide or averaged the varying market rates across the entire Eastern District of Pennsylvania. We disagree. We perceive no abuse of discretion in the District Court's decision to apply Philadelphia market rates to a case that was filed and tried in Philadelphia.

### III. Conclusion

For the reasons stated, we will affirm the judgments of the District Court.

---

[7] The two exceptions are "when the need for special expertise of counsel from a distant district is shown or when local counsel are unwilling to handle the case." *ICO*, 426 F.3d at 704 (citing *Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237, 261 (1985)) (internal quotation marks omitted).

[8] In determining the prevailing rate for a particular attorney, a court should consider the relevant community rates for similar services by a lawyer of reasonably comparable skill and experience. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).