875 P.2d 1327

**Wayne BOGUE, Plaintiff–Appellant,**

v.

**BETTER–BILT ALUMINUM CO., Defendant–Appellee.**

**No. 1 CA–CV 91–0536.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 11, 1994.

Review and Cross–Petition for Review Denied July 6, 1994.

24

Rosemary Cook, Phoenix, for plaintiff-appellant.

Cornelius & Collins by Charles Hampton White, Nashville, TN, and Musgrove and Drutz, P.C. by James B. Musgrove, Mark W. Drutz, Grant K. McGregor, Prescott, for defendant-appellee.

## OPINION

TOCI, Presiding Judge.

Wayne Bogue sued Better–Bilt Aluminum Company, Inc. ("Better–Bilt") for handicap discrimination under the Arizona Civil Rights Act ("ACRA") alleging that Better–Bilt did not hire him because it perceived him to have a hearing impairment. Bogue appeals from the trial court's grant of summary judgment and award of attorneys' fees in favor of Better–Bilt.

We must decide whether a job applicant may be deemed "handicapped" under the ACRA although he claims that he is not in fact handicapped. In order to resolve this question we must decide several subordinate issues: (1) whether an applicant who does not have an actual "physical impairment" under the ACRA may nevertheless qualify for relief if he is regarded by the employer as having such an impairment; (2) whether and to what extent an actual or perceived physical impairment must restrict employability in order to qualify an individual for relief under the ACRA; and (3) whether the ACRA denies relief to a job applicant who fails to advise his prospective employer that

his physical condition constitutes a handicap under the ACRA.

Addressing the above issues, we reverse the summary judgment in favor of Better–Bilt. We conclude that a disputed issue of fact exists about whether Better–Bilt rejected Bogue's job application because it perceived his ear condition to be a handicap. We hold that: (1) the ACRA implicitly prohibits discrimination against individuals who have a perceived handicap as well as explicitly prohibiting discrimination against individuals who have an actual handicap; (2) to qualify for relief under the ACRA, the actual or perceived impairment must do more than simply disqualify an individual from employment in a single job—the actual or perceived impairment must constitute a substantial restriction or limitation on that individual's general employability; (3) the question of whether an applicant is physically impaired and whether that physical impairment substantially restricts the applicant's general employability is a question of fact; and (4) an applicant is only required to give notice to a prospective employer of the physical *condition or impairment* that *may* give rise to a "handicap"—the applicant need not actually state that he has a handicap as defined by the ACRA.

We must also decide whether the trial court erred: (1) in granting summary judgment against Bogue on his claim of wrongful failure to hire; (2) in denying Bogue's motion to amend his complaint to include a count of negligence; (3) in awarding Better–Bilt attorneys' fees; and (4) in denying Bogue's motion to continue oral argument on Better–Bilt's motion for attorneys' fees.

We resolve these issues as follows. We conclude that because Arizona does not recognize the tort of wrongful failure to hire based on a violation of the public policy embodied in the ACRA, the trial court correctly granted summary judgment on this issue. Also, we conclude that because there is no authority to support Bogue's claim of negligence, the trial court did not abuse its discretion in denying Bogue's motion for leave to amend his complaint. Additionally, because we reverse the trial court's grant of summary judgment in favor of Better–Bilt on the

handicap discrimination claim, Better–Bilt is no longer the prevailing party on the major issue in this lawsuit. Accordingly, we vacate the award of attorneys' fee in favor of Better–Bilt. Finally, we need not reach any conclusion on whether the trial court erred in denying Bogue's motion to continue oral argument because our reversal of the award of attorneys' fees renders this issue moot.

## I. FACTUAL AND PROCEDURAL HISTORY

In reviewing the trial court's grant of summary judgment, we view the evidence in a light most favorable to Bogue. *Riley, Hoggatt & Suagee, P.C. v. English,* 177 Ariz. 10, 12, 864 P.2d 1042, 1044 (Ariz.Sup.Ct.1993) (facts viewed in a light most favorable to the party against whom summary judgment was taken). He must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Do by Minker v. Farmers Ins. Co.,* 171 Ariz. 113, 115, 828 P.2d 1254, 1256 (App.1991).

Bogue applied for a job as an assembler with Better–Bilt in Prescott Valley. As part of the application process, Erica Schneider, an occupational health nurse employed by Better–Bilt, conducted a physical examination of Bogue. In completing the health form, Bogue told Schneider that he had had the mastoid process of the temporal bone scraped and that his left ear occasionally drained light green or yellow fluid. Schneider wrote on the form: "Left ear occasionally drains—light green-yellow occasionally. Hole in [tympanic membrane]—had mastoid scraped (7 yrs old)." Schneider informed Sharon Peckinpaugh, senior personnel assistant for Better–Bilt, that she believed Bogue was not eligible for employment because he had an active ear infection that would prevent the wearing of ear plugs.

When Bogue called to inquire about his application, Better–Bilt told him that everything was fine and that it would notify him when the company had an opening. He later learned that Better–Bilt had hired several people since the date of his physical examination.

Believing that he was denied employment due to his age, Bogue contacted the Arizona Civil Rights Division ("ACRD") and filed an age discrimination claim against Better–Bilt. In response to the age discrimination claim, Charles Hampton White, a Nashville, Tennessee attorney for Better–Bilt, wrote a letter to the ACRD that contained the following statement:

> Wayne Bogue on September 20, 1988, applied for a job at Better–Bilt Aluminum Products Co., Prescott, Arizona. During Bogue's process of applying for a job, he was asked to fill out a medical/occupational history. He did so and indicated in response to question number 15 that he had a problem with drainage from his left ear, which condition had developed when he was seven years of age occasioned by the scraping of a mastoid. Since Bogue would have been required to wear ear plugs, as an employee of Better–Bilt, from time to time, while he worked in various areas of the plant, Better–Bilt determined that Bogue's health condition would constitute a probable hazard to him and to fellow workers because of the necessity of wearing ear plugs. *In years past, Better–Bilt had experienced difficulty with employees who have hearing impairments becoming disoriented or losing their sense of balance when required to wear ear plugs. Wayne Bogue was not employed by Better–Bilt Aluminum Products for this reason.*

(Emphasis added.)

Based on this letter, the ACRD suggested that Bogue dismiss his claim of age discrimination and file a new charge alleging handicap discrimination. After Bogue refiled, the ACRD issued findings of fact indicating there was reasonable cause to believe that Better–Bilt had violated the ACRA by failing to employ Bogue because of a handicap.

Bogue filed a complaint against Better–Bilt alleging failure to hire due to a handicap and perceived handicap in violation of Ariz. Rev.Stat.Ann. ("A.R.S.") section 41–1463 (1992). Bogue later amended the complaint to add a claim for wrongful failure to hire in violation of public policy.

Bogue then moved for summary judgment arguing that Better–Bilt had failed to hire him because of a handicap or perceived handicap and that Better–Bilt's failure to hire him violated public policy as embodied in the ACRA. Better–Bilt responded to Bogue's motion and filed a cross-motion for summary judgment. Before the court heard argument on the motions for summary judgment, Bogue moved to amend his complaint to add a claim that Better–Bilt was negligent because it had failed to advise him that he would be hired if he provided a physician's note advising that Bogue could work with ear plugs or muffs. Without stating its reasons, the trial court denied Bogue's motion for summary judgment and motion to amend complaint and granted Better–Bilt's cross-motion for summary judgment.

Better–Bilt sought an award of its attorneys' fees under A.R.S. section 12–341.01(A) (1992), as the prevailing party in an action arising out of contract, and also on the theory that, under A.R.S. section 41–1481(J) (1992), Bogue's "action is factually and legally groundless." Without stating its reasons, the trial court agreed. It awarded Better–Bilt attorneys' fees of $6,000 and costs of $412.12. Bogue filed a timely notice of appeal from the judgment.

## II. DISCUSSION

### A. Handicap Discrimination Claim

Bogue argues that although he is free from any physical impairment, Better–Bilt discriminated against him if it perceived him as handicapped within the meaning of A.R.S. section 41–1461(4) (1992) and denied him employment on that basis. We agree. We conclude that the ACRA implicitly prohibits discrimination against individuals with a perceived handicap. Thus, the trial court erred in granting summary judgment against Bogue on his handicap discrimination claim.

### 1. Definition of Handicap

This matter is governed by the ACRA provision which states that it is an unfair employment practice for an employer:

> To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, age, *handicap* or national origin.

A.R.S. § 41–1463(B)(1) (emphasis added). The ACRA also defines "handicap" as "a physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment." A.R.S. § 41–1461(4).

■ The ACRA is generally similar in both intent and purpose to the Federal Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. sections 701–796i (1988). *Capitano v. Arizona,* 178 Ariz. 599, 600–604, 875 P.2d 832, 833–837 (App.1993); *Matos v. City of Phoenix,* 176 Ariz. 125, 128, 859 P.2d 748, 751 (App.1993). Accordingly, unless the federal law exceeds the scope of the ACRA, we look to federal case law and administrative interpretations for guidance in this area. *Matos,* 176 Ariz. at 128, 859 P.2d at 751; *see also Higdon v. Evergreen Int'l Airlines, Inc.,* 138 Ariz. 163, 165–66 n. 3, 673 P.2d 907, 909–10 n. 3 (1983). Where the Rehabilitation Act is broader than the ACRA, we do not follow the federal law. For example, the Rehabilitation Act defines a handicapped person as one who "has a physical *or mental impairment* which substantially limits *one or more of such person's major life activities.*" 29 U.S.C. § 706(8)(B)(i). The Arizona Legislature, on the other hand, has adopted a narrower definition of handicapped—one that requires a *physical impairment* that substantially restricts or limits general *employability.*[1] *See* A.R.S. § 41–1461(4).

■ A physical condition does not constitute a handicap under the ACRA unless it constitutes a "physical impairment." A.R.S. § 41–1461(4). Because the ACRA makes no attempt to include a list of specific conditions

that would constitute a "physical impairment," and we are unable to find any Arizona law interpreting this term,[2] we turn to federal law for guidance. In *School Board of Nassau County v. Arline,* 480 U.S. 273, 280, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987) (quoting 45 C.F.R. § 84.3(j)(2)(i)(A) (1988)), the United States Supreme Court endorsed a Department of Health and Human Services' definition of the term "physical impairment":

> [A]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genitourinary [sic]; hemic and lymphatic; skin; and endocrine.

We find this definition persuasive and adopt it to interpret the meaning of "physical impairment" under the ACRA.

Not every physical impairment, however, constitutes a handicap for purposes of section 41–1463(B)(1). An individual must have a physical impairment that "*substantially* restricts or limits an individual's *general* ability to secure, retain or advance in employment." A.R.S. § 41–1461(4) (emphasis added). In determining whether a particular impairment is a substantial restriction or limitation on an individual's general employability, we again look to federal law.

*E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Haw.1980), is cited by many of the federal circuit courts of appeal as one of the landmark cases in this area. *See Byrne v. Board of Education, Sch. Dist. of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir. 1992); *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985). In *Black,* the federal district court articulated a set of factors and a method of analysis to apply on a case-by-case basis for determining

---

1. In dicta, *Capitano,* 178 Ariz. at 603, 875 P.2d at 836, extends the scope of the ACRA to protect an individual with a physical impairment that substantially restricts or limits "any major life activity." Although this interpretation is based on the language of the Federal Rehabilitation Act, 29 U.S.C. § 706(8)(B)(i), the ACRA is not so broad. Nevertheless, to the extent that the federal cases discuss employment as being a "major life activity," the federal cases are persuasive.

2. In *Burris v. City of Phoenix,* 179 Ariz. 35, 39, 875 P.2d 1340, 1344 (App.1993), we indicated that a handicap under A.R.S. section 41–1461(4) is a "physical impairment" that must "substantially restrict or limit an individual's general ability to secure, retain or advance in employment." We did not, however, define the limits of the term "physical impairment."

whether an individual's impairment is sufficient to qualify the individual as handicapped. Looking at each individual case, the court must determine (1) the number and types of jobs from which the impaired individual is disqualified, (2) the geographic area to which the individual has reasonable access, and (3) the individual's job training, experience and expectations. *Black*, 497 F.Supp. at 1100–01; *accord Chandler v. City of Dallas*, 2 F.3d 1385, 1392 (5th Cir.1993); *Byrne*, 979 F.2d at 564; *Welsh v. City of Tulsa, Oklahoma*, 977 F.2d 1415, 1419 (10th Cir. 1992); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986); *Jasany*, 755 F.2d at 1249.

The *Black* court stated that a "handicapped individual is one who 'has a physical ... disability *which for such individual* constitutes or results in a substantial handicap to employment.' It is the impaired individual that must be examined, and not just the impairment in the abstract." 497 F.Supp. at 1099. In other words, under the *Black* approach, the focus of the inquiry is whether the specific impairment of that particular individual is a substantial restriction or limitation on that individual's general employability. *Id.; see Capitano*, 178 Ariz. at 601, 875 P.2d at 834.

The factors enumerated in *Black* were applied in *Tudyman v. United Airlines*, 608 F.Supp. 739 (C.D.Cal.1984), another case often cited as precedent by the federal courts of appeal in employment discrimination cases. In *Tudyman*, a flight attendant sued the airline, claiming that he was denied employment as a result of his failure to meet the airline's weight requirements. He argued "that because the weight restriction prevent[ed] him from obtaining a job, for which he would otherwise be qualified, the requirement transform[ed] him into a handicapped individual." *Id.* at 745. The district court disagreed, stating "[t]here is, however, no authority for the proposition that failure to qualify for a single job because of some impairment ... constitutes being limited in a major life activity." *Id.* The court relied on *Black*'s reasoning that "the inability to obtain a single job does not render one 'handicapped.'" *Id.; see Forrisi*, 794 F.2d at 934–95; *Jasany*, 755 F.2d at 1250.

We recently reached the same conclusion. As we stated in *Capitano*, 178 Ariz. at 602, 875 P.2d at 835, "the [ACRA] reference to 'substantial' requires more than a mere showing that one employer regard[ed] an individual as unsuited for one position." Rather, a plaintiff must present evidence showing "'that the plaintiff would be precluded from performing not only the specific job for which [he] applied, but a wide range of jobs'" *Id.* (quoting *Welsh*, 977 F.2d at 1419).

■ Thus, an individual is not handicapped under the ACRA if his impairment only interferes with his ability to perform a particular job for a particular employer, but does not significantly decrease that individual's *general ability* to obtain satisfactory employment elsewhere. *See Capitano*, 178 Ariz. at 601–604, 875 P.2d at 834–837. Further, because each case must be decided on its particular set of facts, broad generalizations may not be drawn from a particular case. The fact that in one particular instance a physical impairment does not rise to the level of a handicap under the ACRA does not necessarily mean that the specific physical impairment may never constitute a handicap under the ACRA.

■ Because we find that the ACRA requires an impairment that "*substantially* restricts or limits" general employability, trivial or minor impairments that do not affect an individual's general ability to secure, retain, or advance in employment do not qualify the individual as handicapped. This reasoning "assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Forrisi*, 794 F.2d at 934; *see also Capitano*, 178 Ariz. at 603, 875 P.2d at 836. The *Forrisi* court discussed policy concerns underlying the term "substantial" in the Rehabilitation Act, stating:

It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was

widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

*Forrisi,* 794 F.2d at 934. The court went on to state:

> If the Rehabilitation Act extended to all individuals who have been rejected from a particular job because of a perceived inability to perform that job ... the [Rehabilitation] Act would cover an individual with acrophobia "who was offered 10 deputy assistant accountant jobs with a particular company, but was disqualified from one job because it was on the 37th floor." ... [A]ny such interpretation would contravene the exclusive statutory concern for *substantial* limitations, whether genuine or perceived.

*Id.* at 935 (citation omitted). We find this reasoning compelling and consistent with both the ACRA and our holding today. *See Capitano,* 178 Ariz. at 603, 875 P.2d at 836; *Probasco v. Iowa Civil Rights Comm'n,* 420 N.W.2d 432, 436 (Iowa 1988).

In *Burris,* this court said that the question of whether cancer is a handicap within the ACRA is a matter of law. 179 Ariz. at 39, 875 P.2d at 1344. In resolving the issues in *Burris,* however, expert testimony was presented at trial to establish cancer as a "physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment." *See Id.* Sufficient evidence existed in that case to "conclude that cancer is a handicap" under the ACRA. *See id.* We hold that the question of whether a particular physical condition reaches the level of a "physical impairment" and whether that physical impairment "substantially restricts or limits an individual's general" employability depends on the facts and circumstances of each case. Unless the legislature chooses to declare a particular physical condition a

handicap, the issue of whether a person is handicapped under the ACRA is a question of fact in each case.[3]

## 2. Perceived Handicap

We now turn to the issue of whether, under the ACRA, Bogue is handicapped even though he claims that he is not. Bogue contends that although he does not suffer from any physical impairment that affects his employability with Better–Bilt or any other company, he is nevertheless protected by the ACRA if Better–Bilt perceived him that way.

Although Arizona has no explicit perceived handicap provision in the ACRA, the Rehabilitation Act and many state anti-discrimination laws specifically provide that it is an unfair employment practice to discriminate against an individual because of a perceived handicap. *See, e.g.,* Mo.Rev.Stat. § 213.-010(10) (Supp.1993); Wash.Rev.Code § 49.-60.180 (1992); Wis.Stat.Ann. § 111.32(8) (1988). Specifically, section 706(8)(B) of the Rehabilitation Act defines a handicapped person as "any person who (i) has a physical ... impairment which substantially limits one or more of such person's major life activities, (ii) *has a record of such an impairment,* or (iii) *is regarded as having such an impairment.*" 29 U.S.C. § 706(8)(B) (emphasis added). Subsection (i) deals with "actual handicaps," while subsections (ii) and (iii) deal with so called "perceived handicaps."

Arizona has essentially adopted section 706(8)(B)(ii) of the Rehabilitation Act. *See Burris,* 179 Ariz. at 39–40, 875 P.2d at 1344–1345; *Capitano,* 178 Ariz. at 602, 875 P.2d at 835. In *Burris,* the claimant applied for a job with the City of Phoenix as a fire fighter. He passed all the required tests, and the city offered him a job. The city later refused to hire Burris because he had a history of cancer, although he did not have the disease at the time. The trial court ruled that " 'the City ... violated the ACRA in that they failed to hire Mr. Burris solely because of their perception that he was handicapped' " and ordered the city to hire him as a fire

---

**3.** *See Hinton v. S. S. Kresge Co.,* 592 P.2d 471, 475 (Kan.App.1978); *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 318 (Tex.1987); *Finney v. Baylor Medical Center Grapevine,* 792 S.W.2d 859, 862 (Tex.App.1990); *Salt Lake City Corp. v. Confer,* 674 P.2d 632, 637 (Utah 1983); *Phillips v. City of Seattle,* 111 Wash.2d 903, 766 P.2d 1099, 1103 (1989).

fighter. *Burris,* 179 Ariz. at 38, 875 P.2d at 1343.

On appeal, the city argued that a history of cancer did not meet the statutory definition of handicap under A.R.S. section 41–1461(4), and that even if it did, the trial court erred in expanding the definition to include individuals with a perceived handicap. In rejecting this argument, we concluded that cancer is a handicap covered by A.R.S. section 41–1463(B)(1). *Burris,* 179 Ariz. at 39, 875 P.2d at 1344. We then turned to the question whether the statute covered an individual who no longer had cancer but was denied a job on the basis of a history of cancer. We concluded that "A.R.S. section 41–1463 prohibits employment discrimination on the basis of a *history of cancer.*" *Id.* (emphasis added). Thus, *Burris* holds that an individual may be handicapped if he once had a condition which, although now of no effect, continues to substantially restrict or limit that individual's general ability to secure, retain or advance in employment because of the stigma associated with the condition. *See id.; accord Allen v. Heckler,* 780 F.2d 64, 66 (D.C.Cir.1985).

In *Capitano,* 178 Ariz. at 602, 875 P.2d at 835, Division Two categorized *Burris* as a "regarded as having such an impairment" case. We do not read *Burris* that way. Analogizing to section 706(8)(B)(ii) of the Rehabilitation Act, we view *Burris* as a "record of such an impairment" case, or in the words of *Burris* itself, a "history of handicap" case, rather than a "regarded as having such an impairment" case. Nevertheless, our reasoning in *Burris* is equally applicable to both situations.

Consequently, the protection of the ACRA includes individuals whom employers "regard as" being physically impaired when in fact they are not. " 'The [ACRA] is remedial legislation designed to eliminate discrimination based on race and other classifications,' including handicaps," and it should be liberally construed to accomplish its intended purpose. *Burris,* 179 Ariz. at 39, 875 P.2d at 1344 (quoting *Arizona Civil Rights Div. v. Hughes Air Corp.* 139 Ariz. 309, 313, 678

P.2d 494, 498 (App.1983)). We cannot on the one hand conclude that the ACRA provides protection to applicants whose physical impairment substantially limits their general employability and on the other hand deny protection to those applicants whom employers only *regard as* having such impairment. *See Capitano,* 178 Ariz. at 602, 875 P.2d at 835; *Burris,* 179 Ariz. at 39–40, 875 P.2d at 1344–1345; *Barnes v. Washington Natural Gas Co.,* 22 Wash.App. 576, 591 P.2d 461, 464–65 (1979); *Dairy Equipment Co. v. Department of Industry, Labor and Human Relations,* 95 Wis.2d 319, 290 N.W.2d 330, 335 (1980). We thus adopt the rationale of section 706(8)(B)(iii) of the Rehabilitation Act.

■ Under our holding, Arizona recognizes three types of handicapped individuals: first, those individuals who presently have an actual physical impairment that substantially restricts or limits their general employability (as expressly recognized in the ACRA); second, those individuals who have been so limited in the past but are not presently limited (the "history of handicap" or "record of such an impairment" recognized in *Burris* ); and, third, those individuals who in fact are not physically impaired, but are *regarded as* such by an employer (as recognized by our holding today). The second and third types of individual both fall under the general category of perceived handicaps.

The concept of being regarded as having an impairment is important in several respects. It applies to an individual with a physical impairment that is mistakenly viewed by the employer as a limiting condition when in fact the impairment does not substantially restrict or limit that individual's general ability to secure, retain, or advance in employment. The concept also applies to an individual who has a physical impairment that substantially restricts or limits an individual's general ability to secure, retain, or advance in employment *only as a result of* the attitudes of others toward the impairment. *See Arline,* 480 U.S. at 283, 107 S.Ct. at 1128–29 ("[A]n impairment might not diminish a person's physical ... capabilities, but could nevertheless substantially limit

that person's ability to work as a result of the negative reactions of others to the impairment.").

It is not enough, however, to show that an employer's decision is based on the perception that an applicant is handicapped. The applicant must be regarded as having a condition defined as a handicap under the ACRA—a "physical impairment that substantially restricts or limits an individual's general" employability. *See* A.R.S. § 41-1461(4). In other words, the impairment perceived by the employer, although in fact nonexistent, must still be a physical impairment within the meaning of the ACRA. For example, if the employer refuses to hire an individual because the individual is erroneously perceived to have a hearing impairment, unless that perceived impairment substantially restricts or limits the individual's general employability, the applicant is not handicapped under the ACRA.

■ To summarize, two elements are involved in determining whether an individual has established a handicap within the meaning of the ACRA. The first element requires a determination of whether a physical impairment, real or perceived, exists. This issue is one of fact for the fact finder; it requires a determination of whether a "physiological disorder or condition, cosmetic disfigurement, or anatomical loss" affects one or more of the body systems enumerated in the definition adopted in *Arline*. *See* 45 C.F.R. § 84.3(j)(2)(i)(A). If the individual has a physical impairment, the second issue, also a question of fact, is whether the impairment either actually, or as it is perceived by the employer, "substantially restricts or limits [the] individual's general ability to secure, retain or advance in employment." An individual with an ear condition such as Bogue's may or may not have a "physical impairment," and that impairment may or may not "substantially restric[t] or limi[t] [his] general ability to secure, retain or advance in employment."

■ Here, the trial court granted summary judgment in spite of White's letter to the ACRD that Bogue was not hired because of his ear condition. Better–Bilt argues that the comments made in the letter were nothing more than the legal argument of counsel and, accordingly, inadmissible against Better–Bilt. We disagree. White's letter was admissible pursuant to Rule 801(d)(2)(D), Arizona Rules of Evidence, which states:

> A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent or ... concerning a matter within the scope of the agency ... made during the existence of the relationship....

*See also Copeland v. City of Yuma,* 160 Ariz. 307, 310–11, 772 P.2d 1160, 1163–64 (App. 1989) (opening statement of plaintiff's attorney in prior lawsuit was admission made by plaintiff's agent within the scope of agency and thus admissible in later lawsuit); *State v. Adams,* 1 Ariz.App. 153, 155–56, 400 P.2d 360, 363–64 (1965) (lawyer's admissions during trial may generally be used against client). White's letter was clearly an admission made during the course of the attorney-client relationship and it involved a matter within the scope of his agency—Bogue's claim of age discrimination against Better–Bilt.

■ White's letter states that Better–Bilt "determined that Bogue's health condition would constitute a probable hazard to him and fellow workers because of the necessity of wearing ear plugs." This language, coupled with White's statement that Bogue was rejected because of past incidents in which "employees with hearing impairments have become disoriented when required to wear ear plugs," creates a material issue of fact whether Bogue's ear condition led Better–Bilt to regard Bogue as handicapped and to deny him employment for that reason.[4]

Finally, because we remand for a new trial, we address Bogue's argument that because Better–Bilt "is a major employer in the small community of Prescott" and because he was "prevented from having a job ... in any position" with Better–Bilt, Bogue's alleged impairment had a "substantial effect on his

---

4. In fairness to the trial court, we note that when the trial court ruled on Better–Bilt's motion for summary judgment, neither *Burris* nor *Capitano* had been decided and Arizona law provided little guidance in this area.

employment." Bogue thus argues that because there is a "substantial" effect on his employment, he is handicapped under the ACRA. Bogue misses the point.

An employer does not necessarily regard an applicant as handicapped simply by finding the applicant incapable of satisfying the singular demands of a particular job. *Capitano,* 178 Ariz. at 602, 875 P.2d at 835; *Forrisi,* 794 F.2d at 934. The ACRA seeks to remedy "perceived handicaps that, like actual disabilities, extend beyond [an] isolated mismatch of employer and employee." *Forrisi,* 794 F.2d at 935; *see Capitano,* 178 Ariz. at 602, 875 P.2d at 835. Thus, the issue is not whether Bogue's alleged perceived impairment had a substantial effect on his employment with Better–Bilt, but whether such perceived impairment *substantially* restricted or limited his *general* employability. Thus, in resolving the latter issue, the trier of fact may consider all relevant factors, including the factors listed above in *Black,* 497 F.Supp. at 1100–01, and Bogue's own testimony that he is not limited in employment by his ear condition. *Cf. Forrisi,* 794 F.2d at 934 (plaintiff was not handicapped under the Rehabilitation Act because he testified that his fear of heights never affected his major life activities); *Jasany,* 755 F.2d at 1250 (plaintiff was not handicapped under the Rehabilitation Act because he stipulated that his "condition had never had any effect whatsoever on any of his activities, including his past work history").

### 3. Notice of Handicap

Better–Bilt argues that it cannot be liable for handicap discrimination because Bogue did not provide it with notice of his handicap as required by A.R.S. section 41–1463(F)(5). We disagree. We do not construe the statute to require a job applicant to tell the employer that the applicant's impairment or condition is one that constitutes a handicap within the specific language of A.R.S. section 41–1461(4), particularly in a case where the employee believes that he does not have a handicap.

A.R.S. section 41–1463(F)(5) states that it is not an unlawful employment practice for an employer to refuse to hire a handicapped individual if the qualified handicapped individual fails to provide the employer with the following information:

(a) That the qualified handicapped individual has an impairment or condition *which constitutes a handicap within the meaning of § 14–1461, paragraph 4.*

(b) The general nature of the possible handicap and any limitations and restrictions resulting from it of which the qualified handicapped individual is aware.

(c) The names of any physicians and other health care practitioners and any rehabilitation or placement counselors and consultants who may be able to provide additional information relating to the nature of the possible handicap and its effects, . . . .

(Emphasis added.) Under a literal reading of this statute, an applicant must inform a potential employer that his "impairment or condition" is one that *"constitutes a handicap within the meaning of § 41–1461[ (4) ]."* A.R.S. § 41–1463(F)(5)(a) (emphasis added).

In interpreting the statute, we first consider the policy behind the statute and the problems it was designed to remedy. *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). The ACRA is remedial legislation designed to eliminate discrimination based on handicap and other classifications. *Burris,* 179 Ariz. at 39, 875 P.2d at 1344; *Hughes Air Corp.,* 139 Ariz. at 313, 678 P.2d at 498. A remedial statute is entitled to liberal construction. *Burris,* 179 Ariz. at 39, 875 P.2d at 1344. Furthermore, we find that the ACRA was created for the protection of the job applicant, rather than for the protection of the employer. Accordingly, A.R.S. section 41–1463(F)(5) must be liberally construed so as to effectuate its intent to protect those entitled to protection under the ACRA. *E.g., Western Asbestos Co. v. TGK Constr. Co., Inc.,* 121 Ariz. 388, 391, 590 P.2d 927, 930 (1979).

Furthermore, a statute must be read so as to give it a fair and sensible meaning. *See Escalanti v. Superior Court,*

165 Ariz. 385, 387, 799 P.2d 5, 7 (App.1990). Under the ACRA, a job applicant is not entitled to protection unless the finder of fact determines that he is handicapped. This may be a complicated question. It is not a reasonable interpretation of A.R.S. section 41–1463(F)(5) to require an average job applicant to determine at the time of the initial job application what is essentially the ultimate issue in a handicap discrimination lawsuit. Thus, we do not construe section 41–1463(F)(5) to require the applicant to state that his physical impairment constitutes a handicap within the meaning of section 41–1463. Section 41–1463 merely requires that the applicant inform the employer of his physical condition and any restrictions or limitations that may affect his job performance.

Here, by submitting to a physical examination and by answering questions, Bogue informed the employer of his ear condition and the absence of any limitations or restrictions resulting from it. The record reveals that he did not provide the name of a doctor who treated the condition because in recent years he neither had a doctor nor had he been treated by a doctor for the ear condition. Thus, although Bogue did not believe he had a handicap that would prevent him from working for Better–Bilt, he did provide the information required by section 41–1463(F)(5).

### 4. Accommodation of Handicap

■ The ACRA provides that it is an unlawful employment practice for an employer "[t]o fail or refuse to reasonably accommodate an individual's handicap." A.R.S. § 41–1463(B)(3). "Reasonable accommodation" is defined as any accommodation that does not:

(a) Unduly disrupt or interfere with the employer's normal operations.

(b) Threaten the health or safety of the handicapped individual or others.

(c) Contradict a business necessity of the employer.

(d) Impose undue hardship on the employer, based on the size of the employer's business, the type of business, the financial resources of the employer and the estimated cost and extent of the accommodation.

A.R.S. § 41–1461(8). It is a jury question whether the employer's actions constituted a reasonable accommodation or whether the employee's requests would have placed an undue burden on the employer. *Phillips v. City of Seattle,* 766 P.2d 1099, 1103 (1989).

Before the trial court reaches the issue of reasonable accommodation, Bogue must first establish a *prima facie* case of unlawful handicap discrimination. Thus, we need not decide whether Better–Bilt could have reasonably accommodated Bogue's condition; this issue will arise on remand only if Bogue establishes a *prima facie* case of handicap discrimination.

### B. Tort of Wrongful Failure to Hire

■ On March 16, 1990, Bogue amended his complaint to add a claim for the tort of wrongful failure to hire. The trial court granted Better–Bilt's motion for summary judgment on this issue. On appeal, Bogue relies on *Broomfield v. Lundell,* 159 Ariz. 349, 767 P.2d 697 (App.1988), for the proposition that Arizona recognizes the tort of wrongful failure to hire based on a violation of the public policy embodied in the ACRA.

In light of our recent decision in *Burris,* 179 Ariz. at 41–43, 875 P.2d at 1346–1348, we find this claim without merit. *Burris* held "that [the] ACRA does not create a common law right that protects job applicants from wrongful failure to hire." *Id.* at 43, 875 P.2d at 1348. *Burris* further stated "[s]ignificantly, the *Broomfield* court did not state, and no other court has stated, that [the] ACRA supports the creation of a tort action that was not recognized at common law." *Id.* Our decision in *Burris* thus rejects Bogue's argument that such a tort claim is available under *Broomfield.* Accordingly, the trial court correctly granted summary judgment on this issue.

### C. Motion to Amend

The trial court denied Bogue's motion to amend his complaint to add a claim for negligence. In its opposition to Bogue's motion to amend, Better–Bilt argued that because it owed no duty to Bogue, the proposed addi-

tion of a negligence claim would be futile. We agree.

In support of his claim that the trial court erred in denying the motion to amend, Bogue argues that Better–Bilt breached its duty to advise him, as a prospective employee, that he would be hired if he obtained a note from a doctor. Bogue maintains that the duty arose when Better–Bilt required him to submit to a medical examination and told him that he would be hired if he successfully completed the medical evaluation. He also argues that because no additional witnesses or facts would have been presented as a result of the amendment and because he offered the amendment to conform the complaint to the evidence, the trial court should have granted his motion to amend. We are not persuaded.

■ A negligence action can be maintained only if there is a duty, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others from unreasonable risks of harm. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). The question of duty is usually decided by the court as a matter of law. *Hamman v. County of Maricopa*, 161 Ariz. 58, 61, 775 P.2d 1122, 1125 (1989). A duty arises when "the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz*, 146 Ariz. at 356, 706 P.2d at 368. If no duty is present, the defendant is not liable even though he may have acted negligently in light of foreseeable risks. *Id.*

The question here is whether a relationship between Better–Bilt and Bogue existed that required Better–Bilt to take affirmative action to protect Bogue and other applicants during the application process. A firmly rooted distinction still exists in the law of negligence "between 'misfeasance' and 'nonfeasance'—that is to say, between active misconduct working positive injury to others and passive inaction or a failure to take steps to protect them from harm." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984). "Liability for 'misfeasance,' then, may extend to any person to whom harm may reasonably be anticipated as a result of the defendant's conduct, or perhaps even beyond; while for 'nonfeasance' it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act." *Id.* at 374 (footnote omitted).

■ The general rule is that absent a special relationship such as that existing between common carrier-passenger, innkeeper-guest, landowner-invitee, custodian-ward, shopkeeper-business invitee, or employer-employee, no duty exists to take affirmative precaution for the aid or protection of another. Restatement (Second) of Torts ("Restatement") §§ 314A, 314B (1965); *Prosser and Keeton on the Law of Torts* § 56, at 373–85. Although an employer has a special relationship with an employee, the same cannot be said about the employer's relationship with a job applicant. *See* Restatement §§ 314A, 314B. Bogue has not cited, and we are unable to find, any authority which would impose a duty on Better–Bilt to take affirmative steps to protect a job applicant. We, therefore, conclude that Better–Bilt owed no duty to Bogue.

■ A decision on a motion for leave to amend is within the sound discretion of the trial court, and we will not disturb the decision absent a clear abuse of discretion. *Hall v. Romero*, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). The trial court appropriately denies leave to amend a pleading " 'when the proffered amendment could not affect the outcome of the litigation, that is, when on its face it is legally insufficient.' " *Matter of Estate of Torstenson v. Valley Nat'l Bank*, 125 Ariz. 373, 377, 609 P.2d 1073, 1077 (App. 1980) (quoting *Home Ins. Co. v. Balfour-Guthrie Ins. Co.*, 13 Ariz.App. 327, 328, 476 P.2d 533, 534 (1970), *appeal dismissed*, 107 Ariz. 296, 486 P.2d 778 (1971)). Here, because we find that Better–Bilt owed no duty to Bogue regarding the application process, Bogue's "proffered amendment could not affect the outcome of the litigation."

Bogue further argues that because Better–Bilt engaged in affirmative acts, that is, giving him a physical examination in the em-

ployment application process, it had a duty to act in a reasonable fashion toward Bogue. Bogue cites the Restatement at chapter 12, page 66, for this proposition. This citation, however, is to the "Scope Note" for "Topic 4. Types of Negligent Acts," rather than to any specific Restatement section. A "Scope Note" does not constitute proper legal authority, and Bogue fails to cite any other authority in support of his argument. Because there is no authority to support Bogue's claim of negligence, the trial court did not abuse its discretion in denying Bogue's motion for leave to amend his complaint.

**D. Award of Attorneys' Fees**

Better–Bilt argues that it is entitled to attorneys' fees under A.R.S. section 12–341.-01(A) as the prevailing party in a suit arising out of contract and under A.R.S. section 41–1481(J) because Bogue's "action is factually and legally groundless." We disagree. The suit did not arise out of contract, Better–Bilt is no longer the prevailing party on the major issue in this lawsuit, and in light of our holding today and our decisions in *Burris* and *Capitano*, Bogue's claim is not factually and legally groundless. Accordingly, we vacate the attorneys' fee award in favor of Better–Bilt.

Both Bogue and Better–Bilt also request attorneys' fees and costs for this appeal. Upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure, we award attorneys' fees and costs to Bogue pursuant to A.R.S. section 41–1481(J) for the portions of the appeal in which he has prevailed. We do not award any fees to Better–Bilt.

Additionally, Bogue requests an award of his attorneys' fees and costs incurred in the trial court. Because it is not yet known who will prevail in the trial court, we deny this portion of his fee request. We do so without prejudice to Bogue's ability to make such application in the trial court if he prevails upon remand.

### III.  CONCLUSION

In conclusion, we find that the trial court erred in granting summary judgment against

Bogue on his handicap discrimination claim because a material issue of genuine fact exists whether he is handicapped under the ACRA. Consequently, we reverse on this issue. Additionally, we vacate the award of attorneys' fees to Better–Bilt, and we award attorneys' fees to Bogue on appeal.

We affirm the trial court's granting of summary judgment against Bogue on his claim of wrongful failure to hire and the trial court's denial of his motion to amend the complaint.

EHRLICH and NOYES, JJ., concur.