67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John SHEEHAN, Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY CO., a Connecticut corporation;
Joanna Turner, an individual, Defendants-Appellees.
 No. 94-15222.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1995.
Decided Sept. 22, 1995.
 
 1
 Before: BEEZER and THOMPSON, Circuit Judges, and EZRA, District Judge.*
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 John Sheehan appeals the district court's summary judgment in favor of Aetna Casualty & Surety (Aetna) and Joanna Turner, an Aetna employee, in his action alleging age and handicap discrimination, in violation of Arizona Revised Statute Sec. 41-1463, breach of contract, interference with contractual relationships, and wrongful discharge.[1] He contends the district court abused its discretion when it refused to consider a supplemental affidavit which he filed in support of his response to the defendants' motion for summary judgment. He also argues that even without the supplemental affidavit, the evidence before the district court was sufficient to withstand summary judgment.
 
 
 4
 We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 5
 Sheehan was employed by Aetna for approximately thirty-three years before Aetna terminated his employment in 1991. At the time of his termination, Sheehan was fifty-seven years old. He was admittedly obese, as he had been throughout the course of his employment with the company.[2]
 
 
 6
 From 1977 until the time of his discharge, Sheehan held the position of Administration Manager in Aetna's Phoenix office. As Administration Manager, Sheehan was responsible for accounting, collections, human resources, office services, and automation and technology.
 
 
 7
 For ten years, Sheehan's supervisor was the general manager of the Phoenix office, Cliff MacIntosh. Sheehan contends the annual reviews MacIntosh prepared for him during this period show he was a competent employee who performed his job satisfactorily.
 
 
 8
 In 1987, Aetna replaced MacIntosh with a new general manager, Joanna Turner. Soon thereafter, Aetna began introducing new technological hardware and software systems into its regional offices and began expanding and enhancing the general computer technology throughout the company. Aetna assigned the responsibility for operating and utilizing the new technology to the administration managers and persons reporting to them. Aetna contends it fired Sheehan because he was unable to develop adequate proficiency with the new technology, and was otherwise not meeting the required performance standards for an administration manager.
 
 
 9
 Sheehan disputes Aetna's explanation for its decision to discharge him. He contends he met all the performance requirements for Administration Managers, and was adjusting well to the new technology. He argues he was terminated not for unsatisfactory performance but because of his age and weight.
 
 STANDARD OF REVIEW
 
 10
 We review a district court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).
 
 
 11
 We review a district court's refusal to accept untimely filed affidavits for abuse of discretion. Western Chance No. 2, Inc. v. KFC Corp., 957 F.2d 1538, 1544 (9th Cir.1992).
 
 DISCUSSION
 A. Supplemental Affidavit
 
 12
 Sheehan argues the district court abused its discretion when it refused to consider an untimely supplemental affidavit which he filed in support of his response to the defendants' motion for summary judgment.[3] The affidavit contained allegations that Turner took away Sheehan's duties as college recruiting coordinator because he was "older" and "out of touch" with college students. The affidavit was filed three months late under the time limits set by the district court's scheduling order.
 
 
 13
 Sheehan does not contend the information in the affidavit was "new" to him and, therefore, could not have been timely submitted. He argues simply that, "given the voluminous facts and paperwork involved [in the case], the court should have recognized that not every piece of evidence could have been submitted at the time of the original response."
 
 
 14
 The district court, however, had already granted Sheehan a month-long extension to file his response in recognition of the fact-intensive nature of the litigation. There was no page limit on the response, and no reason Sheehan could not have included the information contained in the affidavit. The district court was not required to consider the affidavit, and it did not abuse its discretion by refusing to do so.
 
 B. Age Discrimination
 
 15
 The Arizona Civil Rights Act (ACRA) makes it unlawful for an employer "to discharge any individual ... because of such individual's .. age." Ariz.Rev.Stat.Ann. Sec. 41-1463(B)(1) (1995).
 
 
 16
 In order to state a prima facie case of age discrimination under the ACRA, the plaintiff must show that he (1) belongs to the protected class; (2) was objectively qualified for his position; (3) was terminated; and (4) was replaced by a younger person. Gesina v. General Elec. Co., 780 P.2d 1376, 1379 (Ariz.Ct.App.1989). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to present evidence that the termination decision was based on a legitimate, nondiscriminatory reason. Id. If the defendant meets this burden, the burden shifts to the plaintiff to prove that the defendant's asserted reason for the termination decision is a pretext for discrimination. Id.
 
 
 17
 In this case, the parties do not dispute that Sheehan established a prima facie case of age discrimination. They also agree Aetna met its burden of coming forward with a legitimate, nondiscriminatory reason for its decision to discharge Sheehan--his unsatisfactory performance. The district court granted summary judgment for the defendants because it concluded Sheehan did not produce sufficient evidence to create a triable issue regarding pretext. Sheehan contends this ruling was erroneous.
 
 
 18
 Sheehan attempted to show pretext with the following evidence: (1) the testimony of several Aetna administrative managers from other regional offices stating their impressions that Sheehan's performance was adequate; (2) the positive evaluations in his annual performance reviews, especially those prepared prior to Turner's arrival; and (3) Turner's comments regarding his age.
 
 
 19
 The testimony of the other Aetna administration managers is not probative of pretext. Sheehan admits that none of these managers worked directly with him. They were not in a position to evaluate him.
 
 
 20
 Sheehan's positive evaluations are also insufficient to create a triable issue regarding pretext. Most of the positive comments in Sheehan's annual performance reviews regarding his automation abilities predate Aetna's introduction of the new computer technology. They are irrelevant to the question whether Sheehan responded adequately to the changes. The positive reviews in the later performance appraisals relate almost exclusively to Sheehan's abilities in the area of accounting. Aetna has never contended Sheehan's performance in this area was unsatisfactory. It was his communication skills, interpersonal skills, organization, and time management--in addition to his problems adjusting to the new technology--which allegedly led to his discharge. Complaints about Sheehan's performance in these areas can be found in almost every one of his performance appraisals, dating back to 1980.
 
 
 21
 Sheehan argues Turner's comments about his age are evidence of age discrimination. According to Sheehan, shortly after Turner assumed her position at Aetna, during a meeting in which Sheehan introduced her to other Aetna agents, Turner referred to him as "old and crotchety." Given the context in which this statement was made, and the fact that it occurred years before Sheehan's termination, it does not support a claim of age discrimination. See Merrick v. Farmer's Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990) ("stray remarks" regarding age insufficient to establish age discrimination).
 
 
 22
 In Sheehan's 1990 performance appraisal, Turner indicated that "Sheehan's work may suffer from some degree of boredom due to his longevity." This is not a comment about Sheehan's age. It is an attempt to explain Sheehan's unsatisfactory performance. As such, it does not support an inference of age discrimination.
 
 C. Handicap Discrimination
 
 23
 The ACRA also makes it unlawful for an employer to discriminate on the basis of an individual's handicap in the process of making employment decisions. Ariz.Rev.Stat.Ann. Sec. 41-1463(B)(1) (1995). Sheehan contends various comments Turner made regarding his weight indicate he was fired not for unsatisfactory performance, but because he is obese.[4] He contends this was handicap discrimination in violation of the ACRA.
 
 
 24
 In order to succeed on this claim, Sheehan must establish that his obesity is a "handicap" within the meaning of the ACRA. The ACRA defines "handicap" as "a physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment." Ariz.Rev.Stat.Ann. Sec. 41-1461(4), amended by 1994 Ariz.Legis.Serv. ch. 258, Sec. 1 (West).
 
 
 25
 The parties vigorously dispute whether obesity, or at least diabetic obesity--which Sheehan claims to have--qualifies as a "physical impairment." The ACRA does not specifically define "physical impairment," and no Arizona court has decided whether either obesity or diabetic obesity comes within the meaning of that term.
 
 
 26
 We need not resolve this issue. Sheehan cannot succeed on his handicap discrimination claim even assuming his obesity is a "physical impairment" for purposes of the ACRA. He has presented no evidence that his obesity "substantially restricts or limits his general ability to secure, retain or advance in employment." See Bogue v. Better-Bilt Aluminum Co., 875 P.2d 1327, 1332-33 (Ariz.Ct.App.1994) (recognizing that not every physical impairment constitutes a handicap for purposes of the ACRA; the impairment must substantially restrict employability).
 
 
 27
 Sheehan contends he is not required to prove his obesity restricted his ability to work because, from Turner's comments regarding his weight, it is clear she perceived that it did. See Bogue, 875 P.2d at 1334-36 (holding that "perceived handicaps" are protected under the ACRA). The fact that Turner believed Sheehan's weight affected his ability to perform his functions as administration manager, however, is insufficient to establish that Sheehan's obesity is a handicap within the meaning of the ACRA. "[A]n individual is not handicapped under the ACRA if his impairment [, actual or perceived,] only interferes with his ability to perform a particular job for a particular employer, but does not significantly decrease that individual's general ability to obtain satisfactory employment elsewhere." Bogue, 875 P.2d at 1333. Sheehan presented no evidence that employers in general would perceive his obesity negatively in assessing his employability. Compare Burris v. City of Phoenix, 875 P.2d 1340, 1344-45 (Ariz.Ct.App.1993) (plaintiff presented evidence that people with history of cancer generally face difficulties in job hiring and promotion because of employers' misconceptions about the lingering effects of cured cancer) with Capitano v. Arizona, 875 P.2d 834-36, (Ariz.Ct.App.1993) (no evidence that hearing loss, actual or perceived, significantly limited employability).
 
 D. Breach of Contract
 
 28
 Sheehan contends the district court erred in granting summary judgment for the defendants on his breach of contract claim. He contends he was denied his contractual right to be placed on progressive discipline prior to being terminated for performance problems.[5] However, Sheehan was an at-will employee, and he did not have a contractual right to progressive discipline.
 
 
 29
 Aetna's Personnel Policies and Programs Manual, which according to Sheehan promises progressive discipline, states in the introduction:
 
 
 30
 [T]he language used in this manual is not intended to create, nor should you interpret this to be, a contract between the Company and any one or all of its employees.... [E]mployees may terminate their employment at any time, with or without notice, and the Company may do the same. Any modification of this arrangement must be in writing and signed by an officer of the Company.
 
 
 31
 As the district court held, "[a] personnel manual that expressly states that the employment relationship it governs is an at-will relationship which may be terminated at any time does not give an employee a contractual right to procedures outlined in the manual absent a course of conduct on the employer's part indicating a willingness to be bound contractually." See Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 850 n. 9 (9th Cir.1990); Leikvold v. Valley View Community Hosp., 688 P.2d 170, 174 (Ariz.1984).
 
 
 32
 Sheehan admits no Aetna officer ever signed a document that modified the terms of his employment. He has presented no evidence of a course of conduct on Aetna's part which indicates a change in the employment relationship. Aetna provided him with at least some form of progressive discipline, but it was not required to do so.
 
 E. Other Claims
 
 33
 Sheehan's interference with contractual relationships claim depends on his breach of contract claim and must fail with it.
 
 
 34
 Sheehan's wrongful discharge claim also fails as a matter of law. Sheehan did not present sufficient evidence to create a genuine issue regarding either age or handicap discrimination. Therefore, he did not create a genuine issue for trial regarding whether Aetna's acted wrongfully when it terminated his employment.
 
 F. Attorney Fees
 
 35
 Sheehan requests attorney fees pursuant to Ariz.Rev.Stat.Ann. Sec. 41-1481(J) (1995) and Ariz.Rev.Stat.Ann. Sec. 12-341.01(A) (1995). These statutes each provide for an award of attorney fees only to a prevailing party. Because Sheehan has not prevailed, he is not entitled to attorney fees. Aetna and Joanna Turner do not seek attorney fees.
 
 CONCLUSION
 
 36
 The district court properly granted summary judgment in favor of the defendants. Sheehan's age discrimination claim fails as a matter of law because he did not create a triable issue regarding pretext. His handicap discrimination claim fails because he did not present evidence sufficient to create a genuine issue regarding whether obesity qualifies as a handicap under the ACRA. There was no breach of contract, because Sheehan was not contractually entitled to be placed on progressive discipline. The remainder of Sheehan's claims depend on the viability of these claims and must fall with them.
 
 
 37
 AFFIRMED.
 
 
 
 *
 Hon. David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sheehan's complaint alleged additional claims under federal law for age and handicap discrimination. As the statutory base for his federal handicap discrimination claim, Sheehan relied upon 42 U.S.C. Sec. 2000e-2(a), a provision which prohibits discrimination based on race, color, religion, sex, or national origin. Sheehan's federal handicap discrimination claim should have been brought under the Rehabilitation Act of 1973, 29 U.S.C. Secs. 701-796, or the Americans with Disabilities Act of 1990, 42 U.S.C. Sec. 12101, et seq. For his federal age discrimination claim, Sheehan correctly relied upon 29 U.S.C. Sec. 623. Sheehan also alleged claims for breach of the duty of good faith and fair dealing, retaliatory discharge and intentional infliction of emotional distress
 Sheehan voluntarily dismissed his federal claims before the district court ruled on the defendants' summary judgment motion. The district court granted summary judgment on the breach of good faith, retaliatory discharge and emotional distress claims, and Sheehan does not appeal this portion of the court's order.
 
 
 [2]
 Sheehan--who is 5 feet, 11 inches tall--weighed 257 pounds in 1978, 280 pounds in 1983, 219 pounds in 1985, 292 pounds in 1989, and 304 pounds in 1991
 
 
 [3]
 The affidavit was attached as an exhibit to a voluminous document entitled "Supplemental Memorandum and Factual Support in Response to Defendants' Motion for Summary Judgment." The district court refused to consider the entire document. Sheehan appeals the court's order only with respect to the affidavit
 
 
 [4]
 In a performance review Turner prepared for Sheehan in January 1988, Turner wrote that "[i]t is essential that John lose significant weight for consideration for future advancement, but more importantly for family and his own health." In Sheehan's 1989 performance appraisal, Turner stated that "[p]ersonal appearance including weight condition needs attention to make John more effective and protect his personal health." Turner repeated this statement in the 1990 evaluation, after noting that Sheehan "has not addressed his personal appearance/weight" problems
 
 
 [5]
 The record indicates Sheehan was placed on progressive discipline. Sheehan's claim is apparently not that he did not receive progressive discipline at all, but that he was denied certain aspects of progressive discipline. However, he does not indicate precisely what aspects of progressive discipline he did not receive